## CHARLESTON.

FLORENCE BELL FRY *v.* CITY OF RONCEVERTE.

Submitted March 13, 1923.   Decided March 20, 1923.

1. MUNICIPAL CORPORATIONS—*Municipal Authorities of Ronceverte Without Power to Charge Abutting Landowner Expense of Establishing Grade for Sidewalk and Building Retaining Wall.*

   Under chap. 5, Acts 1919, "Municipal Charters," being the charter of the city of Ronceverte, the municipal authorities have no power or authority to charge the owner of a lot of land abutting on a sidewalk or street with the expense of constructing the grade by excavating a hill, or making an embankment, and building a retaining wall to support the same, in order that a sidewalk may be laid along the street, nor to assess the amount of such expense and record it as a lien upon the lot. (p. 391).

2. SAME—*Municipal Authorities of Ronceverte Empowered to Charge Abutting Lot Owner With Expense of Laying Sidewalk After Establishment of Grade.*

   Said municipal authorities have authority and power to require such lot owner to lay a sidewalk after the grade has been established and prepared for the same; and after due notice to the owner, and failure on his part to construct such sidewalk, they may lay the same and charge the expense against the lot owner, and assess the amount thereof as a lien against the lot. (p. 391).

3. CONSTITUTIONAL LAW—*Constitutionality of Act or Ordinance not Considered, Unless Necessary to Decide Litigation.*

   The constitutionality of a statute or municipal ordinance

will not be considered by the court, unless it be necessary to a decision of the litigation.   (p. 391).

Certified questions from Circuit Court, Greenbrier County.

Suit by Florence Bell Fry against the City of Ronceverte. On certified question.

*Affirmed.*

*Mark L. Jarrett* and *James H. Crozier,* for plaintiff.
*Chas. S. Dice,* for defendant.

LIVELY, JUDGE:

The question certified is: whether the city of Ronceverte has authority and power under its charter to require the owner of a lot which abuts on a street to make a fill with retaining wall to hold the same, on which to lay a sidewalk; and upon his failure to do so if the city may make such fill and build such retaining wall and assess the costs thereof as a lien against the lot.

On October 26, 1921, the city of Ronceverte served a notice on the complainant, Mrs. J. W. Fry, requiring her to construct a permanent cement sidewalk on the south side of Greenbrier street avenue upon which her lot abuts 50 feet, the width of the sidewalk to be 5 feet and laid upon a grade to be established under the direction of the street commissioner; and upon her failure so to do the city would proceed to construct said sidewalk and that the full amount of the total cost of grading and filling, surfacing and completing the said sidewalk to be charged to her and reported as a tax lien against the lot, with interest thereon after the expiration of 30 days.   Mrs. Fry failed to give notice that she would construct such fill and wall and lay the sidewalk thereon, and on March 6, 1922, the city ordered the improvement to be made and the sidewalk laid, advertised for bids therefor and awarded the contract to a bidder, who proceeded to make the fill and construct the walk.   On June 14, 1922, Mrs. Fry presented her bill for injunction to the circuit court to enjoin the city from proceeding further in the work, which injunction was refused.   Upon application to a judge of this court the injunction was granted, and at the September, 1922,

term of the circuit court the plaintiff filed an amended bill alleging among other things that the city had no power to require her to make the improvement designated in the notice or to require her to pay for the same; that it was proceeding to do so and intended to record the amount of the expense thereof as a lien against her lot which would be a cloud upon her title; and that the charter of said city, of such power and authority was given therein, was unconstitutional, because the special tax or assessment upon her lot was out of proportion to the value of the property, would not be uniform and equal in respect to other properties similarly situated, and would amount to a confiscation. The city demurred to the original, amended and supplemental bills, and answered the same. From the answer it appears that after the circuit court had refused to grant the injunction prayed for and before the injunction granted by a judge of this court had been served upon the mayor, the grading and construction of the retaining wall upon Greenbrier street avenue adjoining the plaintiff's lot was completed, but since the injunction had been served no further work had been done. The cost of the grading and the construction of the wall was $301. Estimated cost of constructing the cement sidewalk on the grade was $75, making a total cost of the entire improvement, $376. The gist of the answer is that the city by virtue of its special charter has implied authority to require complainant to make the improvement abutting her lot as required in the notice and as hereinbefore set out, and that the improvement made and contemplated is not unlawful, oppressive and confiscatory; and that the special benefits derived by her by reason of the enhancement of the value of her lot would exceed the amount of the assessment against the same for the improvements. Exceptions to the answer were filed and the cause submitted. Upon consideration the court sustained the exceptions to the answer and held that the same was insufficient in law to the extent that the allegations therein assert a claim and right and authority of the city to charge the expense of construction of grading, substructure and retaining wall; and decreed that the city was not justified in charging the plaintiff with the expense of constructing the grade, the sub-structure and the

retaining wall to support the same, or to assess the amount of such expense as a lien against the lot. The city not desiring to amend its answer, upon motion of its counsel the court certified its ruling to this court. The substance of the question certified is whether the city has authority under its charter to construct, at the plaintiff's expense, the fill and retaining wall.

Greenbrier street avenue was formerly a road which wound around a hill where plaintiff's lot is located. Her lot fronts 50 feet on Main street and runs back with equal width up the hill to Greenbrier street avenue. Her dwelling on the lot faces Main street. In order to make the grade on which to lay the sidewalk as required by the city it would necessitate a retaining wall from 6 to 10 feet high for 50 feet along the rear of her lot, and require a considerable embankment between the retaining wall and the street. It appears that other abutting lot owners similarly situated have acceded to the demand of the municipal authorities and have erected the necessary retaining walls and made fills on which the sidewalk along their various properties is laid. The estimated total expense which will be required of complainant is $376.

The solution of the question propounded depends upon a construction of the authority given to the city in its charter, for such purposes. The charter is found in chapter 5 of the Acts of 1919, "Municipal Charters." By the first section the city is given the power "to assess, levy and collect taxes for general and special purposes on all the subjects or objects within its boundaries, which the city may lawfully tax, * * * * may pave, re-pave, curb, re-curb, grade, re-grade, sewer, re-sewer or otherwise permanently improve any street, alley or roadway within the city limits and assess the cost thereof as hereinafter provided for * * * * and shall have all powers that now are or hereafter may be granted to municipalities by the constitution or laws of West Virginia, or that are herein by implication conferred, or are necessary to or consistent with the purposes of this act; and all such powers, whether expressed or implied, shall be exercised and enforced in the manner prescribed by this act, or when not prescribed herein, in such manner as shall be pro-

vided by ordinances or resolutions of the governing body herein provided for." The provisions for construction of sidewalks are contained in section 41 which gives to the commissioners of the city power to determine the material to be used, where sidewalks shall be constructed, the width and grade thereof and to require the owners of lots facing a sidewalk to pave the same with the material and on the grade and of such width as may have been determined, at the expense of the owners, and under the supervision of the proper city official; and if the owners refuse to pay the same within the time required then the city has power to lay the sidewalk and assess the amount of the expense thereof to the owners, and cause a memorandum thereof to be filed with the clerk of the county court to be recorded on the judgment lien docket as a lien upon the lot, which lien may be enforced by a proper action in the circuit court; but reasonable notice shall be first given to the owners that they are required to construct the sidewalks. The same provisions are applicable to needed repairs for any of the sidewalks or substitution of new pavements for any which have been before laid and completed and which are deemed insufficient. This is the only section which has any reference to the construction of sidewalks, which a close inspection of the charter has disclosed.

The provisions relating to street paving are found in section 42 by which the commissioners can provide for paving with bricks, cobblestones or other suitable material any street or alley between the curbstones, upon the lowest and best terms obtainable. Under this section the whole cost of paving from curb to curb of any such street or alley is assessed to the owners of the land fronting upon the same, that is to say, the property owners on each side shall be assessed one-third each and the city one-third of the cost, to each property owner a sum proportionate to the distance or extent in feet owned by him, one-third to be paid to the city within 30 days after the completion of the work, and the remainder in installments. The paving of intersections of the streets and alleys is to be paid by the city. Then follows provisions for fixing the assessment against each property owner and for notice to him and for recordation of the assess-

ment in the county clerk's office as a lien against the property so assessed.

It is upon these provisions of the charter that the city predicates its right to require the lot owners to erect retaining walls and make embankments on their property upon which to lay sidewalks under the provisions of section 41 above set out. It is pointed out that under section 41 the commissioners have power to *determine* the material to be used in building sidewalks, to *determine* where such sidewalks shall be *constructed,* and the width and grade thereof, and shall fix upon the material with which the same *shall be built,* and require the owners of the lots abutting on such sidewalks to pave the same with such material and *on such grade* and of such width as may have been determined, at the expense of the owners. Special stress is laid upon the words ''determine,'' ''construct,'' ''shall be built,'' and ''on such grade,'' and it is claimed that these words so used, give the city power and authority to require the lot owners to build retaining walls, make fills and then construct or lay the sidewalks thereon. It is argued that under the plain meaning of this language all the city is required to do is to establish the grade, indicate the material and width of the sidewalks, and then require the lot owners, at their own expense, to do all things necessary for the building of the sidewalks upon the grade indicated. The argument is that the city is only required to fix the grade and then it is said, ''in all common sense and reason how can the abutting lot owner pave the sidewalk on a prescribed grade, as he is by the plain and unambiguous language of the act required to do, unless the grade is first constructed, the ground first reduced to a level or to an evenly progressive ascent, and if the abutting lot owner is not required to grade or so prepare the ground for the paving admittedly required to be done by him or at his expense, then pray, who is required to grade or so prepare the ground to be paved, for a sidewalk?'' We cannot agree with this argument or to this interpretation of the statute. The language used in section 41 will not justify it. The express power to pave streets and assess the cost thereof as ''hereinafter provided'' contained in sec. 1, has reference to street paving as contained in sec. 42 above set out. The implied

powers mentioned in section 1 above set out are for the purpose of carrying into effect those expressly given or which are reasonably consistent with those given, including those expressly or impliedly conferred on municipalities by the constitution and general laws. We think it would be an unreasonable interpretation of these sections to hold that the city could run an imaginary line fixing a grade and then require the lot owners to excavate a hill, or fill up a declivity in order to lay thereon a sidewalk. The cost might be excessive and confiscatory. If the legislature intended to impose such burden the language should have been plain and unambiguous, not requiring such fanciful interpretation. The general rule is that statutes which impose burdens are to be strictly construed. 2 Lewis Suth. Stat. Const., sec. 536. "When there is any ambiguity found, the construction must be in favor of the public; because it is a general rule that where the public are to be charged with a burden, the intention of the legislature to impose that burden must be explicitly and distinctly shown." *Fox* v. *Com.*, 16 Grat. p. 1. In the case of *Brown* v. *Com.*, 98 Va. 366, the court said: "Laws imposing a license or tax are strictly construed, and whenever there is doubt as to the meaning or scope of such laws, they are construed more strongly against the government and in favor of the citizen." See also *State* v. *County Court*, 60 W. Va. 339. Under sec. 28 of chap. 47 of the Code, authority is given to the towns created under that chapter to "order sidewalks * * * to be curbed and paved and kept in good order, free and clean, by the owners or occupants of the real property adjacent thereto"; and by sec. 34, upon refusal of the property owners to do so the council may cause the same to be done at the expense of the city and assess the amount thereof to the owners; and enforce the same as a lien against the property. The council has plenary power to lay off, close, open, alter the streets, regulate the width of the sidewalks thereon and to fix and change grades. The powers in that regard given to the city of Ronceverte are no greater than the plenary powers given to towns for that purpose under the provisions of chap. 47 of the Code. In our case of *Gassaway* v. *Klein*, 77 W. Va. 461, it was held that municipalities organized under said chapter 47 cannot

require an abutting land owner to construct sidewalks along the street in front of his property and require him to pay the expense for grading, excavating, or stone work done in preparing the sidewalk for the pavement or curbing. In the opinion Judge Mason cites with approval 3 Dillon on Municipal Corporations, sec. 1147, as follows: ''It has been held that authority conferred by statute to require the property owner to build and maintain a suitable sidewalk does not confer authority upon the city to require the property owner to remove embankments, or to fill in depressions to bring the grade of the sidewalk to the established grade of the street.'' Culverts, curbing and guttering, being essential parts of a roadway, are usually considered proper subjects for the exercise of the power of local assessment, but are not a part of the sidewalk, and cannot be laid under an order to construct a sidewalk. *Job* v. *People,* 193 Ill. 609, 61 N. E. 1079. Somewhat applicable is the case of *Van Tassel* v. *Mayor of Jersey City,* 37 N. J. Law Repts. 128, wherein it was said that there was no valid objection against assessing the cost of flagging sidewalks, on the principle of frontage, but, under such a power, the estimate must not include any part of the expense of substantial grading, excavation and filling, of that part of the street occupied by the sidewalks. It was held that incidental grading for the mere purpose of flagging might be included, but not the substantial grading of any part of the street, although included in the sidewalks.

Plaintiff has charged in her bill that to give the construction of the statute claimed by the city, and thereunder require her to build the retaining wall and make the fill at large expense, would render that part of the city's charter unconstitutional and void as an unequal tax and as confiscatory. From what we have said it will not be necessary to discuss this point. A court will never pass upon the constitutionality of a statute, unless it is necessary to determination of the case. *Edgell* v. *Conaway,* 24 W. Va. 747; *Shephard* v. *Wheeling,* 30 W. Va. 479; *Rutter* v. *Sullivan,* 25 W. Va. 427.

We affirm the ruling of the lower court, and so answer the question certified.

*Affirmed.*