# CHARLESTON.

S. A. BOWLING *et als. v.* CITY OF BLUEFIELD

(No. 6027)

Submitted November 23, 1927.   Decided December 6, 1927.

1. MUNICIPAL CORPORATIONS—*Circuit Court's Decision on Appeal From Paving Assessment Held Reviewable by Supreme Court of Appeals, Amount in Issue Being Over $100 (Bluefield City Charter 1921, § 50; Code, c. 135, § 1 [1]).*

    A number of abutting property owners, by virtue of a provision in the charter of the City of Bluefield, appealed to the circuit court for the purpose of having a paving assessment (previously confirmed by the city's board of directors) reviewed and corrected. On the hearing had before the circuit court, questions were raised as to the existence or non-existence of special benefits to the abutting properties by reason of the paving, as well as the applicability of a portion of the funds derived from a certain bond issue to such improvement. The circuit court's action on such questions being judicial in nature, is subject to review by this Court; the amount in issue being over $100.00. (p. 593).

    (Municipal Corporations, 28 Cyc. p. 1183.)

2. SAME—*Property Owners, Attacking Assessments, Must Show Lack of Benefits and Court's Finding on Conflicting Evidence Will Not be Disturbed, Unless Plainly Wrong.*

    Where, on such review, an assessment for the cost of paving a street is attacked on the ground that no special benefits have accrued to the abutting properties, the burden rests on the contestants to establish such fact; and a finding by the trial court on conflicting evidence will not be disturbed unless plainly wrong. (p. 595).

    (Appeal and Error, 4 C. J. § 2855; Municipal Corporations, 28 Cyc. p. 1183.)

3. WITNESSES—*Witness, Knowing Improvement's Effect on Property's Market Value, May Give Opinion as to Value; Weight Thereof Being for Court.*

    Any person who has knowledge of the effect which the construction of an improvement will have on the market value of the property assessed is competent to give an opinion as to such value, the weight to be given to such opinion being for the court on the hearing. (p. 595).

    (Witnesses, 40 Cyc. p. 2199.)

4. MUNICIPAL CORPORATIONS—*In Determining Proper Application of Funds From Sale of Bonds, Court May Not Go Outside Terms of Order of Submission.*

In determining the proper application to be made of money arising from a sale of bonds, authorized at an election, the circuit court has no jurisdiction to go outside of the specific terms of the order of submission. (p. 598).

(Municipal Corporations, 28 Cyc. p. 1598.)

5. SAME—*Sum Allocated to Improve Streets in Bond Issue Voted is Presumed For Part Chargeable to City Alone, and Not to Paving (Bluefield City Charter 1921, § 50).*

Where a municipality, acting under its charter, which authorizes the pavement of streets and the assessment of the cost thereof against abutting property owners, submits a bond issue to the voters thereof for the purpose of making improvements, which bond issue includes an allocation of a specific amount for the widening and improving of certain streets, the presumption is that the sum so allocated to such widening and improving is to be applied to the payment of the cost of the improvement for which the city is alone chargeable, and was not to include the cost of the paving of such streets. *City of Bluefield* v. *Johnson*, 68 W. Va. 303. (p. 596).

(Municipal Corporations, 28 Cyc. p. 1598.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of Syllabi.)

Error to Circuit Court, Mercer County.

Petition by S. A. Bowling and others, property owners, protesting against the confirmation of paving assessments by the City of Bluefield. From an adverse decision by the Board of City Directors, plaintiffs appealed to the circuit court. Judgment approving and confirming the assessments, and plaintiffs bring error.

*Affirmed.*

*James S. Kahle* and *John Kee,* for plaintiffs in error.
*Sanders, Crockett, Fox & Sanders* and *Wm. E. Ross,* for defendant in error.

WOODS, JUDGE:

This case concerns the validity of a certain paving assessment made against property owners on East Princeton Avenue in the City of Bluefield.

Section 50 of the Charter of the City of Bluefield places authority in the board of directors of said city to cause any street or alley to be paved, and to assess the cost of such paving in equal proportions against the owners of the lots abutting or bounding thereon in proportion to the distance of frontage owned by each. *Acts of the Legislature (Municipal Charters) 1921.* This section also requires that notice be published after the paving is completed, setting out the amount assessed against each lot or fractional part, etc.; and provides for a hearing of grievances of abutting property owners upon petition by the board of directors in regard to said assessments, and that such findings shall be subject to correction by the circuit court on appeal, etc.

On March 25, 1925, the board of directors, by a duly enacted ordinance, in addition to other paving, provided for the paving of Princeton Avenue from Lee Street to east city limits. The validity of its enactment is not raised here. Section 4 of the ordinance provides the kind of pavement for the portion of Princeton Avenue above indicated; and section 5, that ''The cost of said paving, curbing and guttering shall be paid by the property owners abutting upon said streets, one-half ($\frac{1}{2}$) thereof to be paid by the abutting property owners on the other side of each of said streets, except on those streets whereon a street railway occupies a portion of the street, on which street it is hereby provided that the said street railway company shall pay for the paving between the rails and a foot outside of the rails and a space between its tracks where more than one track is on the street. The cost of paving on such streets to be borne in equal proportions by the owners of the abutting property on both sides of said streets on which said street railway is being operated, as provided by Section 50 of the City Charter; and the cost of such paving, curbing and guttering on all of said streets shall be assessed against the lots or fractional parts of lots and the owners thereof abutting or abounding that portion of the said streets to be paved, curbed and guttered, in proportion to the length of frontage owned by each, and shall be assessed against the owners of any street railway occupying any of the said streets to the extent as provided herein''. Other

sections provide the method and terms of payment for such pavement. The last paragraph of the ordinance is as follows: "Upon the completion and acceptance of said paving, curbing and guttering on any or all of the streets enumerated herein, assessments shall be made for the cost thereof chargeable to the persons, firms, or corporation that may be liable therefor, as provided for herein, and said assessments shall become a lien upon and against the property made liable and chargeable with the payment of said assessments; and the City Clerk shall certify to the Clerk of the County Court of Mercer County the said assessments, and the same shall be recorded in said Clerk's office as notices of said liens against the properties made liable for the payment of said paving, curbing and guttering assessments, as provided by the City Charter, and shall remain a lien until the same is paid off and discharged."

Pursuant to said ordinance, contracts were let by the city of Bluefield for the paving of the avenue in question and said paving was laid under said contracts. On its completion the city by ordinance, after reciting that such paving was accepted, ordered that the collection of the costs be made, agreeable to Section 50 of the Charter, and the clerk instructed to cause to be published once a week for two consecutive weeks in a newspaper of general circulation, a notice to the effect that such paving had been accepted, and that a part of the costs had been assessed against abutting property owners. The names of the property owners so affected, with the lot number, section number, frontage, and amount of assessments, were set out in the notice, with the general notice to them that if any one desired to complain of such assessment, they were notified to appear before the board of directors of the city at a regular meeting thereof within thirty days, and show cause, if any they could, why the said assessments should not become final. Within the thirty days S. A. Bowling and seventy-four other property owners appeared before the board of directors of said city, and filed a petition protesting against the confirmation of the paving assessments. The complaining abutting property owners allege, in substance, that the property to be affected by the proposed

assessment is located in a poor section of the city; that the several owners are of limited means; that a good asphalt pavement traversed East Princeton Avenue prior to the widening and improvement of the same; that said pavement was torn up and destroyed and the avenue widened and repaved; that the benefit derived therefrom, if any, has inured to the City of Bluefield, rather than the petitioners; that the latter have been materially hurt thereby; that some months prior to the acts aforesaid a bond issue, duly proposed and submitted to the voters by proper ordinance, was carried, authorizing the city to issue bonds for certain proposed improvements to the amount of $850,000.00; that by virtue of a proclamation, printed and distributed on the authority of the board of directors prior to the election, an item of $60,000.00 was included for the widening and improvement of said East Princeton Avenue, which item petitioners believed at the time was intended to cover any and all improvements proposed to be made to said avenue; that the proposed assessment amounts to the taking of property without due process of law; and then comes the prayer that the city refrain from collecting the amounts set out in the proposed assessment statement; that the said $60,000.00 be first credited to the extinguishment of the debt; that the same should not be made final at that time; and for general relief.

Under the provision of the City Charter hereinbefore quoted, an appeal was taken from the action of said board of directors, to the circuit court of Mercer county. Upon this hearing the circuit court approved and confirmed the assessments complained of and found them to be correct and valid assessments, and liens against the property of the plaintiffs. It is to this judgment that a writ of error to this Court was awarded.

We are met at the threshold with a motion to dismiss the writ of error as improvidently awarded. No appeal to this Court is allowed by the Charter. It is true that this Court has held that a city's action in making and confirming assessments against property is purely administrative and legislative, and not reviewable by the court, unless it be upon a showing that the legislative power conferred upon the govern-

ing power of the municipality was fraudulently or corruptly exercised. *Damron* v. *City of Huntington*, 82 W. Va. 401. But an appeal has been entertained where taxibility or judicial questions relating to the ascertainment of valuation were raised. *Bank* v. *Spencer*, 71 W. Va. 678. Such questions were practically in issue in the case here. In the matter of such appeal, the trial court acted judicially, when it passed upon (1) the existence or non-existence of special benefits by reason of said improvements; and (2) the applicability of a portion of the bond issue to the paving for which the plaintiffs were assessed. In such case its judgment is subject to review, upon writ of error, by this Court, the amount in controversy being above the statutory amount. *Copp* v. *State*, 69 W. Va. 439; Code, Chapter 135, Section 1, sub-division (1).

From the record made before the circuit court it appears that, along in 1921, those in charge recognized that certain public improvements were necessary to the welfare of the municipality. Among such improvements was that of East Princeton Avenue. This street was of irregular width. The paving was macadam fifteen feet wide, the street car line being in the middle of the paving. The macadam was full of holes. As this street was a connecting link in the state highway running through the city, it was very greatly travelled and congested. The paving was in such a dilapidated condition that it could not be satisfactorily repaired. One side of the street was bounded by the Norfolk & Western Railway's tracks. It was at first thought best to widen the street by taking property of the land owners on the other side. This, however, would have necessitated the condemnation and removal of a number of dwellings. So, it was eventually determined to acquire the necessary property from the railway company, and to remove the street car tracks from the middle of the pavement over on the strip of property so purchased from the railway company. Contracts were entered into by the city with the street car company and the railroad company to bring about this result. The street was graded, retaining walls were erected, and a concrete paved way 27 feet in width was laid.

The petitioners challenge the necessity of a street of such proportions for their needs. That the city was invested with the authority to improve the street under the conditions existing here is undoubted. Hamilton, Law Spec. Assessments, §703. Are not the petitioners estopped from objecting to the widening of the street by reason of their voting for the bond issue, which contained a specific provision for the "improving and widening" of the same? *Makemson* v. *Kauffman,* 35 Ohio St 444. But again, the petitioners assert that no special benefits accrued to their lands from the improvement, therefore there should be no special assessments against them. The law is well established that the right to make a special assessment against land for improvement is based on the theory that special benefits accrue to the land from such improvement. If there are not special benefits to the land, there should be no special assessment against it. *Norwood* v. *Baker,* 172 U. S. 269; *Engineering Co.* v. *Gallaher,* 101 W. Va. 110. The burden of showing the absence of special benefits is upon the party attacking the assessment. *Wright* v. *Forrestal et al.,* 65 Wis. 341; *Bigelow* v. *City of Boston,* 120 Mass. 326. There was conflict in the testimony on this point on the hearing in the circuit court. Practically no one testified to the absence of special benefits except the parties in interest. Many of them admitted that they had suits pending against the city for damages growing out of such improvement. On the other hand, there was testimony given by divers citizens residing in other sections of the city to the effect that the properties had sustained special benefits to the amount of the assessment against them. But the petitioners say that they are not proper witnesses. It has been held that any person who has knowledge of the effect which the construction of an improvement will have on the market value of the property assessed is competent to give an opinion as to such value, the weight to be given to such opinion being for the court or jury trying the case. *Pike* v. *City of Chicago,* 155 Ill. 656. Where there is a conflict in the evidence, the finding of the trial court is entitled to peculiar weight and ordinarily will not be disturbed on review. The question of whether damages occasioned by the loss of lateral support is proper to be raised under the provision of Section 50 of the Charter re-

quiring the land owners to appear to complain of any "grievance or injury" they may have suffered by reason of the assessment, does not arise here. No evidence was introduced, or sought to be introduced, upon which such a finding could have been predicated.

We now come to the chief contention of the abutting property owners in this case. What was the effect of the bond issue? There was assessed against the properties of these petitioners abutting on the south side of East Princeton Avenue the aggregate sum of $28,449.24, being one-half of the total cost of repaving said street. This amount was apportioned, according to the provisions of the Charter, among the property owners according to the street frontage. The petitioners would have $60,000.00 from the bond issue applied to such improvement. They further contend that the city had no legal right to expend any amount in excess of said sum so allowed to the improvement and widening under the bond issue; and that it cannot assess the abutting property owners with such excess, unless their property was specially benefitted to at least the amount of the assessment. We have held already that the lower court's holding that the property had been so benefitted cannot be disturbed. This leaves to be determined the question of the proper application of the bond money. The protesting property owners assert that the city by public advertisement and announcement proposed to the voters a bond issue for $850,000.00, out of which was proposed to be allocated the sum of $60,000.00 to the specific purpose of widening and improving East Princeton Avenue, and for no other purpose. This bond issue was submitted to the voters in June, 1923. The abutting property owners contend that it was to include the cost of paving as well. In the ordinance providing for the issuance of bonds, the object stated was to provide funds for general sewer construction, both sanitary and storm; for building and constructing a municipal building; for acquiring and providing land for parks and play-grounds; for additional sewer and street construction and extentions; *and for improving and widening of South Bland Street and East Princeton Avenue.* The ordinance provided for the sum of $360,000.00 for general sewer

construction, including both sanitary and storm; $100,000.00 for the building and construction of a municipal building; $50,000.00 in acquiring and providing land for parks and play grounds; $140,000.00 for additional sewer and street construction and extensions, and *"$200,000.00 for the improving and widening of South Bland Street * * * and the improving and widening of East Princeton Avenue, from Lee Street east to the corporate limits."* The city, through its officers, contend that the amount allocated to the improvement of the two named streets, was never intended to cover the cost of the paving. They point to the fact that the Charter specifically provides how the paving is to be paid for; that aside from the construction of retaining walls, paving of street intersections, etc., the street paving shall be paid by assessing against the abutting property owners on either side equal proportions of the cost thereof. This statute according to their contention, would be read into the ordinance for the issuance of bonds. As will be seen, the major portion of the money derived from the issuance of bonds was to be applied to city-wide projects. The city directors further aver in support of their view that it was first intended to widen the street by taking properties on the south side of the avenue by condemnation or otherwise, which would entail considerable expense. Even the evidence introduced by protestants at the hearing before the trial court to the effect that the city engineer had, in December 1922, made an estimate of the cost of improving and paving of East Princeton Avenue at $155,856.00, tended to support this claim. Of course, it is only claimed by protestants that $60,000.00 be allocated for the improvement here complained of. Then the bond issue could not have been intended to cover the entire cost of the proposed improvement. This same question was squarely met and decided in the case of the *City of Bluefield* v. *Johnson,* 68 W. Va. 304. There, as here, was involved the effect of a bond issue for the improvement of certain streets, where the Charter provided that the abutting property owners be assessed with the cost of paving. The court held that under these conditions the city may apply the whole of such fund raised by the bond issue to the payment of the

cost of the improvement which it was obligated to pay. It is observed that a lump sum of $200,000.00 was specified in the bond ordinance for the improving and widening of both Bland Street and East Princeton Avenue—no apportionment of this amount being set out therein. The protestants maintain that the city is bound by a statement sent out to the voters of the municipality prior to the bond election in which, among other things, it was stated that $60,000.00 was to be allocated to the improving and widening of East Princeton Avenue. It does not appear that such statement was authorized by the board of directors by order duly passed. But, the mayor in office at the time of its issuance, and members of the board of directors admit that such a statement was circulated among the voters at their instance. We have held on precisely a similar question that we are not justified, in determining the rights of the parties, to go outside of the specific terms of the order of submission. *County Court of Roane County* v. *O'Brien, Judge,* 95 W. Va. 32. The fact that the bond ordinance was a general one for city benefits, and that the statute law of the city only provided for one way in paying for city paving, argues strongly in support of the city's view. There is no presumption that the municipal authorities acted in contravention of the charter provision governing street paving. *Tingue* v. *Village of Port Chester,* 101 N. Y. 294. Neither does the oral testimony, if proper to be considered, bear out the contention that the property owners had fully understood that the paving was to have been paid out of the $60,000.00 of the bond issue. But admitting that said amount was to be allocated to the improving and widening of East Princeton Avenue, the evidence before the trial court was to the effect that this sum has been or will be applied to the widening and improving of said street, aside from the paving thereof. The record (testimony of Wrenn, Kelly and Sanders) shows that $60,060.16 had been so expended at the time of the hearing. The testimony elicited the fact that eight or ten suits were pending before the court against the city for damages arising to the abutting property owners out of the widening of Princeton Avenue. Thus we see that expenditures made for the purchase of land for

widening East Princeton Avenue, the building of retaining walls, the paving of street intersections, and damages for destruction of lateral support, etc.—all of which is a burden on the city—accounts for an amount equal to, if not in excess of, that sought to be applied from the bond issue for the improving and widening of said avenue. To this sum may properly be added the damages that may be adjudged hereafter against the city in the suits now pending, estimated at $15,000.00. So, the lower court found on the evidence. We do not feel constrained to interfere with that finding. Under this view, the protestants, even admitting their contention to be correct as to the application of the bond money, can have no just complaint at that application made of it.

Are the complainants liable for the full amount assessed against them? They object to the items for earth excavation, loose rock excavation, solid rock excavation, and the cost of engineering. Certain high places had to be leveled down and low places filled up for the purpose of dressing up the subgrade to receive the paving. This was merely incidental grading that we have held to be allowable in such cases. *Frye v. Ronceverte*, 93 W. Va. 395. Cost of scarifying the old pavement is complained of. The evidence shows that the old pavement was broken up and used as a base for the new pavement. Had this not been done a new base would have been required at a large additional cost. Surely a charge for engineering is proper in such case. This service embraces not only laying out the project by a competent engineer, but a supervision of the work while being done, and an inspection after the completion thereof. The expenditures for these purposes were vested in the sound discretion of the board of directors. There was no evidence to the effect that such expenditures were excessive. We will not disturb them.

Complaint is made of the refusal of the court to empanel the jury to try the question of whether the bond issue did not in fact include and comprehend the laying of the concrete pavement. Under a proceeding such as we have here on appeal from the decision of the municipal officers, the protestants are not accorded a jury trial on the issues raised as a matter of right. Such reference here, as in all other cases, rested in the sound discretion of the trial court. This discre-

tion, while subject to review, will not be disturbed unless the same was abused.

The judgment of the circuit court is in all respects

*Affirmed.*