# CHARLESTON.

## WINIFREDE COAL CO. *et al.. v.* BOARD OF EDUCATION OF CABIN CREEK DIST. *et al.*

### Submitted June 22, 1899—Decided November 28, 1899.

1. SCHOOL LEVY—*Equity Jurisdiction.*

    A court of equity has jurisdiction to restrain by injunction the collection of an illegal levy upon the property of a school district, made by the board of education, in a suit brought by and on behalf of the resident taxpayers of such district. (p. 135).

2. SCHOOL LEVY—*School Books—Building Fund.*

    The levy by the board of education to pay for school books must be made annually, and must be paid out of the building fund. (p. 137).

3. SCHOOL LEVY—*Valuation.*

    The fact that the levy of forty cents on the one hundred dollars valuation for building fund and fifty cents thereon for teachers' fund is not sufficient to pay any existing indebtedness of the district in addition to the other purposes for which it is levied, is not a condition precedent to the authority of the board to exceed said rates in laying such levy, since the statutes provide other contingencies, which authorize the board to levy in excess of said rates or to lay a special levy. (137- 138).

4. EQUITY PLEADING—*School Levy.*

    In a bill of this character it is not sufficient to allege in general terms that at the time the levy was laid there was no legal existing indebtedness against the board of education created in any manner authorized by law, but facts must be alleged to show the illegality of the levy. (138).

Appeal from Circuit Court, Kanawha County.

Bill by the Winifrede Coal Company and others against the board of education of Cabin Creek district and others. Decree for plaintiffs and defendants appeal.

*Reversed.*

W. S. LAIDLEY, FLOURNOY, PRICE AND SMITH, and CHILTON, MACCORKLE & CHILTON, for appellants.

GEORGE W. PATTON and BROWN, JACKSON & KNIGHT, for appellees.

ENGLISH, JUDGE:

The board of education for Cabin Creek district, at its meeting held in July, 1898, made a regular levy of thirty-five cents on every one hundred dollars valuation of the property in said district for the building fund, and of ninety cents on every one hundred dollars for the teachers' fund, and, in addition thereto, the said board, at the same meeting, laid a special levy of twenty-five cents on every one hundred dollars valuation of the property taxable in said district, which was designated as a "special building fund." At the time said levies were made it is claimed there was no legal indebtedness due, owning or payable by said board; but the voters of said district, pursuant to section 41 of chapter 45 of the Code, had authorized said board to continue the free schools of said district for seven months in the year.   The levies so made had been extended upon the tax books of said district, and the books containing the same had been delivered to J. H. Copenhaver, sheriff of Kanawha County, who was proceeding to collect said levies, and threatening to compel the taxpayers of said district to pay their respective taxes at the rates aforesaid by distraining therefor, when, on the 17th of December, 1898, the Winifrede Coal Company and others, who sued on behalf of themselves and all other taxpayers of Cabin Creek district, filed their bill in equity in the circuit court of Kanawha County, alleging the above-mentioned facts, with others, and praying that the court would restrain, inhibit and enjoin said Sheriff Copenhaver from collecting said special building tax of twenty-five cents on the one hundred dollars valuation, which was levied by said board at its meeting in July, 1898, and from collecting said levy for the teachers' fund of ninety cents on each one hundred dollars valuation, or, if not the whole of the levy for the teachers' fund, that it would restrain, inhibit, and enjoin the said sheriff from collecting more than fifty cents on each one hundred dollars valuation for teachers' purposes for said year from the plaintiffs and from all the other taxpayers in said district, and also from levying on or selling any of the property of said plaintiffs for said specific tax, and from paying any of the taxes which he had collected or might collect on account of said building fund of said district upon alleged

or pretended indebtedness of the said board which arose or is claimed to have arisen out of contracts or transactions with said board prior to the making of said levy; and that said board and the president and commissioners thereof might be restrained and enjoined from making any allowance, or issuing any orders, or taking any other actions towards the payment of any such alleged indebtedness; and that the levy for said special building tax made by said board at its July meeting might be declared to be illegal, null, and void, and that its levy of ninety cents for teachers' purposes, made at said meeting, might be declared illegal, null, and void, or, if not to the whole, at least as to forty cents thereof; and that any pretended indebtedness which might have been attempted to be created by said board without the authority of law, and in the manner prescribed by law, might also be declared illegal, null, and void. On February 17, 1899, the defendants to said bill, the board of education of Cabin Creek district, William H. Edwards, Adam Schlegel, and D. M. Jarrett, demurred to the plaintiffs' bill, which demurrer was set down for argument, and was overruled, and thereupon the defendants tendered their answers to plaintiffs' bill, which were excepted to, and the exceptions overruled by the court, and the answers ordered to be filed.     The plaintiffs also demurred to said answers, which demurrers were overruled, and the plaintiffs replied generally, and the defendants moved the court to dissolve the injunction awarded the plaintiffs in the cause, which motion was overruled by the court.     Thereupon the defendants moved the court to require of the plaintiffs a bond in the penalty of ten thousand dollars, conditioned for the payment of all such costs or damages as should be sustained by the defendants, or either of them, or any other person, in case the injunction be dissolved; which motion the court overruled, but ordered that the plaintiffs give a new injunction bond before the court in the penalty of five hundred dollars.     From this decree, the board of education obtained this appeal.

While it is true the action of the court in overruling the defendants' demurrer to plaintiffs' bill is not assigned as one of the errors relied upon in the petition for an appeal, yet counsel for the appellants, in their brief, insist that the

court erred in overruling said demurrer.    It is contended
that heretofore the courts have been averse to the equita-
ble interference with the taxing power in the ordinary pro-
cess of the collection of the revenue, and in order to justify
such interference the case must be made one of absolute
necessity before the same would be granted.    We do not
understand such to have been the tendency of the ruling
of this court or of the Virginia court of appeals in consid-
ering this question.    The jurisdiction of equity in matters
of this kind has been held to be accumulative, and equity
has been regarded the proper forum in all cases where the
remedy at law was not plain, complete, and adequate.    In
*Bull* v. *Read*, 13 Gratt. 78,—a case in which a levy had
been made for school purposes, and a bill had been filed to
enjoin the collection of the taxes on the ground that it was
illegally levied,—the jurisdiction of equity was sustained.
Judge Lee, in delivering the opinion of the court, said: "It
may be that for each act of the board of commissioners
affecting the inhabitants of the district every one who is
aggrieved might have a remedy at law of some sort, more
or less effectual, but the remedy in equity would be far
more perfect, adequate and complete; and as the acts of
the commissioners would be in their nature continuing,
and to be renewed from time to time, to restrict the par-
ties to their legal remedies would be to consign them to
interminable litigation, and involve endless multiplicity of
suits.    Hence the court of chancery will interpose by its
injunction to prevent the threatened wrong, and provide a
remedy which shall at once reach the whole mischief, and
secure the rights of all both for the present and the future;
and its jurisdiction in such cases would seem to be well de-
fined and fully sustained by authority,"—citing numerous
authorities.    This portion of Judge Lee's opinion is re-
ferred to and quoted with approval by JOHNSON, J., in the
case of *Corrothers* v. *Board*, reported in 16 W. Va. 541,
which was a case in many respects similar to the one at
bar, and in which the jurisdiction of equity was maintained,
the Court holding in the first, second, and third points of
the syllabus as follows:    "(1) A suit in equity will not lie
to restrain the collection of a tax on the sole ground that
the tax is illegal.    There must exist, in addition, special
circumstances bringing the case under some recognized

head of equity, such as that the enforcement of the tax would lead to a multiplicity of suits," etc. "(2) Where the case is thus brought under some recognized head of equity jurisdiction,—as where the plaintiff brings the suit in behalf of himself and all other taxpayers in the district who are to suffer by the tax imposed,—if the bill shows that the tax is illegal, to avoid a multiplicity of suits, equity will take jurisdiction by injunction. (3) Where equity has jurisdiction of a subject, and the legislature, by statute, gives a remedy at law for the injury complained of, and does not, by the terms of said statute, take away the equitable jurisdiction, it must be considered as an additional remedy; and the equitable jurisdiction is not thereby ousted." See said case, and the authorities therein cited; also, *Christie* v. *Malden*, 23 W. Va. 667 (Syl., point 2). Now, it is true our statute (Code, page 1062) provides a mode for superseding an illegal or erroneous levy upon the petition of ten taxpayers, etc. This statute does not, however, by its terms, take away equity jurisdiction; and, following the ruling in *Corrothers* v. *Board*, *supra* we must consider the statutory remedy as merely cumulative, and hold that the circuit court committed no error in overruling the defendant's demurrer. It is also true that this court, in *Wells* v. *Board*, 20 W. Va. 157, recognized the fact that an illegal levy made by a board of education might be superseded, under chapter 72, page 153, Acts 1875, by pursuing the mode therein prescribed; but the ruling in that case by no means contravenes or antagonizes the ruling in the case of *Corrothers* v. *Board*, *supra*, because said statute does not, by its terms, take away the equitable jurisdiction, and a party wishing to supersede the levy as illegal may elect his forum. As a matter of course, the facts properly pleaded in the bill must be taken as true in considering the demurrer. This being the case, let us inquire whether the plaintiffs' bill entitles them to the relief sought. They allege that they are informed, believe, and charge that on the first Monday in July, 1898, there was no legal existing indebtedness due, owing, or payable by said board, and no such indebtedness has been incurred or created in any manner authorized by law, and at that time there was no lawful debt against said board, and that, notwithstanding these facts, in July, 1898,

said board made the levies before stated.  Referring to the statutes, we find that section 38 of chapter 45 of the Code limits the levy for building fund to forty cents on the one hundred dollars valuation.   Section 40, same chapter, provides that the levy to support the primary free schools, which is known as the "teachers' fund," shall not exceed the rate of fifty cents on the one hundred dollars valuation, yet the latter portion of section 40 provides that:   "If the levy provided for in this and the 38th shall not be sufficient to pay any existing indebtedness of the district in addition to the other purposes for which it is levied, the board may increase such levy to the amount actually necessary or lay a special levy for the purpose."   Section 41 provides for the submission to the voters of the district the question as to whether the schools therein shall be continued more than four months (which, by a subsequent statute, reads five months), and, if the proposition for a longer term receives a majority of the votes cast, then the board may order the levy accordingly.   The allegation above quoted from the plaintiffs' bill seems to be predicated upon the supposition that the board would only be warranted in levying more than forty cents on the one hundred dollars for the building fund and fifty cents on the one hundred dollars for the teachers' fund when it was necessary in addition to the other purposes, while, as we have seen, if the voters of the district vote in favor of more than five months' school, the board may levy accordingly.   The error into which the pleader has evidently been led in his bill is in presuming the rates of forty cents for building fund and fifty cents for teachers' fund cannot be exceeded unless it be to pay existing lawful indebtedness of the district in addition to other purposes for which it is levied.   Another instance in which forty cents on the one hundred dollars valuation for building fund may be exceeded is found in section 15, chapter 62, of the Acts of 1897, where it is provided that "the board of education shall pay the costs of such books and the amount of charges for transportation out of the building fund of the district, and shall lay an annual levy for the same upon the taxable property of the district in the manner and at the time that other levies are laid for said fund."   This serves to show that the existence of prior lawful indebtedness is not a condition pre-

cedent to the right to exceed the rates of forty cents for building fund or fifty cents for teachers' fund. Under said section 15, chapter 62, I do not understand that the levy therein provided for can only be applied in payment for books purchased before the levy is made. It merely provides a fund for the payment of books furnished to the depositaries; and we must presume the board, in levying twenty-five cents on the one hundred dollars valuation, performed the duty required of it by statute. The plaintiffs, in their bill, content themselves with alleging that at the time said levy was made there was no lawful debt against said board. We say, however, that allegation may be true, and yet the plaintiffs not be entitled to the relief prayed for. If the levy was illegal, the plaintiffs, in their bill, must point out in what respect the illegality consists. The defendants are entitled to this to enable them to make proper defense.

The plaintiffs further allege and charge that said board of education had certain transactions and made certain pretended agreements and contracts with school furniture and book companies or firms but are not informed as to the companies or firms with which such contracts were made, or of the facts necessary to enable them to set out such alleged contracts, but say it has been done without lawful authority, and in violation of the Constitution; and thus fails to point out in what the alleged illegality consists. See *Armstrong* v. *County Court*, 41 W. Va. 602, (24 S. E. 993). Sands, in History of a Suit in Equity (page 11; §17), says: "The bill must show sufficient matters of fact *per se* to maintain the case, and, if it be defective in this, the bill will be dismissed;" citing Mitf. Eq. Pl. 125. As to the allegation that they were not informed as to the parties with whom such contracts were made, they might easily have ascertained these facts from the records of the board of education, and such firms or persons were necessary parties to the bill. The general rule laid down in 1 Bart. Ch. Prac. p. 141, is that "all persons interested in the subject-matter of the bill, and which is involved in and to be affected by the proceedings and result of the suit should be made parties," etc. The parties who sold the books to this board of education are directly interested in the result of this suit, which seeks to enjoin the payment

of their claims. In my view of the whole case presented, the circuit court erred in overruling both the demurrer to plaintiffs' bill, and the motion to dissolve the injunction. The injunction is dissolved, the demurrer sustained, and the cause remanded, with leave to amend the bill if the plaintiffs deem proper.

*Reversed.*