HERBERT C. HELLER & COMPANY *v.* CHARLESTON-DUNBAR TRACTION COMPANY *et al.*

(No. 7214)

Submitted May 3, 1932.   Decided May 17, 1932.

(Rehearing denied July 21, 1932)

300

*H. W. Bowers, Marcum, Lovins & Gibson,* and *Poffenbarger & Poffenbarger,* for appellant.

*MacCorkle, Clark & MacCorkle* and *Rummel, Blagg & Stone,* for appellee Charleston-Dunbar Tract. Co.

LIVELY, JUDGE:

The validity of a street paving assessment is at issue in this litigation.

The city of Dunbar paved its Dunbar Avenue and issued to the contractor paving certificates against the abutting landowners, which certificates under section 61 of its charter became liens upon the properties abutting on the avenue. The certificates against defendant Charleston-Dunbar Traction Company aggregated $11,562.12, and were made on December 21, 1928. These certificates were assigned to plaintiff for value in April, 1929, and when the first payment became due (they were payable in ten equal annual installments), defendant refused to pay, repudiated the certificates, and this suit was instituted to compel payment, at August Rules, 1929. The city, the contractor Lemma, Charleston Interurban Railroad Company, hereinafter called the railroad company, and Charleston-Dunbar Traction Company (hereinafter called the traction company) were joined as defendants. The traction company and railroad company demurred and answered; depositions were taken, and upon final hearing, the decree, entered August 14, 1931, dismissed the cause as to the railroad company, holding that it owned no property in the city subject to assessment and that no assessment had been made against it; dismissed the cause as to Lemma, the contractor, without prejudice, no relief being prayed for against him; and dismissed the bill as to the traction company on the

ground that the paving was of no benefit to its property, that plaintiff had failed to show that an assessment was legally laid against it or that the certificates were legally issued, or that a lien was legally perfected against the properties of it or either of the defendants, or that defendants were liable for any sum of money. Plaintiff appeals, and asks reversal on the ground that defendants railroad and traction companies are estopped from denying the validity of the assessments, alleging that after due notice to appear before the council on or before June 18, 1928, the time set for hearing protests against the improvements, they failed to appear and make protest, on the contrary, permitted the work to be done; that they did appear before the council on December 17, 1928, and filed written protest against the levying of the assessments, but failed to take legal steps to prevent the laying thereof; that the resolution of the council, passed June 4, 1928, reciting that the land abutting on the improvements were determined to be benefitted by said improvement was an exercise of legislative power and not subject to judicial review unless arbitrarily, fraudulently or corruptly exercised.

The steps leading up to the assessment made by the council in chronological order are as follows: On March 16, 1928, a resolution was adopted declaring necessity and expediency of paving Dunbar Avenue from Industrial Street to the eastern city limit; and June 18th was set as the day for property owners to protest, if they desired. On April 2nd, the resolution was adopted, and April 23rd fixed as protest day. On or about April 16th (the exact day is not clear) notice of the resolution was served on property owners, not including defendants, by an officer of the police department, and the return states that Charleston Interurban Railroad Company could not be found. On April 23rd, a protest was filed, and a motion was passed to eliminate the paving of Dunbar Avenue. On May 7th, the council seems to have started anew to pave Dunbar Avenue, for, on that day, a resolution was introduced to improve Dunbar Avenue from Industrial Street to eastern limit of the city as a necessary and expedient work, with the adoption of plans and specifications, estimates and profiles, the whole cost to be paid by special assessments

against the abutting lots and lands which were determined to be especially benefitted by the improvement, and the time and terms under which the certificates were to be paid and the perfecting of liens therefor as provided by the charter, section 61. This resolution fixed *April 23rd* as the time for the property owners to appear for protest. A copy of the resolution and notice was served on certain of the residents of the city, not including defendants, by an officer of the police department on the..........day of June, 1928, and his return shows that certain persons could not be found, among others, the "Charleston Interurban R. R. Company". No reference is made in the return to Charleston-Dunbar Traction Company. This return was sworn to by the officer on June 15, 1928. This return appears to have been inserted or pasted in the minute book between the meetings of the council of June 4th and June 18th. The resolution offered on May 7, 1928, was published on June 8th and 15th in a newspaper published in the city. The notice to non-residents, including Charleston Interurban Company, was published in that paper in its issues of June 8th and 15th. It also appears that this ordinance, or similar ordinance (it is not clear), was again published on June 22nd and June 29th. On June 4, 1928, the council passed the ordinance introduced May 7th, and fixed June 18th for protests from those to be assessed. Another ordinance relating to improvement of Dunbar Avenue and assessments therefor on all lots and lands abutting thereon was introduced. The next meeting of the council was on June 18th, when a petition, signed by 28 of the property owners against paving of Dunbar Avenue was read. An ordinance for the improvement of Dunbar Avenue from Industrial Street to the eastern city limit, laid over from the meeting of June 4th, was read and adopted, and the mayor directed to advertise for bids. On July 2nd, the contract was awarded to Lemma.

The minutes of the meeting of council on December 17, 1928, show that written protest was filed against the laying of the assessment for the work done on Dunbar Avenue by the traction company and by the railroad company, which protest was accepted and filed; the meeting was recessed to December 21st, at which time the assessment complained of

against the traction company was approved. No assessment was made against the Charleston Interurban. On July 5, 1929, the assessments were recorded in the county clerk's office. These are the procedural steps taken by the council.

On August 18, 1928, Lemma, the contractor, sent a letter to the railroad company advising that he had been awarded the contract for paving Dunbar Avenue and stating that he had been informed that it would object to the paving and that it might contest payment of the assessment against its right of way on the northern side; and that he would proceed to do the paving at once unless promptly prevented from so doing by injunction or other proceedings; to this letter, the railroad company answered August 20th, by its attorney, stating that it denied the right of the city to assess it for paving along the right of way and would contest the validity of any certificates issued.

The assessments in litigation were upon the traction company's right of way abutting on the north side of Dunbar Avenue, a distance of about 2,000 feet. This right of way was acquired from Fred Paul Grosscup in 1913, and is thirty feet wide, over which is operated a trolley line for passengers between Dunbar and the city of Charleston by the Charleston Interurban Railroad Company, which is a lessee of the traction company, the owner of the right of way. In short, the Charleston-Dunbar Traction Company owns the right of way assessed, and the Charleston Interurban Railroad Company operates a traction line over it as lessee.

The railroad company, by answer, denied that it owned any land or interest in land abutting Dunbar Avenue, set up the fact that it was operating the traction line as lessee and was not liable for any assessments. The traction company, by answer, denied the legality of the proceedings of the council pursuant to which the certificates were ultimately issued. It set up the fact that it only had an easement for right of way over the land abutting Dunbar Avenue. It charged that it received no benefits from the improvement, and on the contrary, that it occasioned a severe loss to its business; that the certificates present no legal valid demand against it; that the

attempted lien against it is invalid; and that it owes nothing to complainant.

The evidence taken by defendant traction company on the question of benefits to it, shows that it received no benefits from the improvement, on the contrary, that it was a severe detriment to its property and materially lessened its value. Plaintiff meets this evidence by saying that it cannot be considered; that where the council has by ordinance, as in this cause, determined that the properties abutting will be benefitted, the courts will not and cannot hold otherwise unless the finding of the council is so unwarranted, arbitrary or fraudulent as to show that the declaration of benefits is without foundation of fact; and plaintiff contends that the declaration of benefits to the traction company is not unwarranted.

Assuming that the city could lawfully levy the special assessment on the traction company's right of way, we are met with the preliminary question, namely, was the assessment legally laid? The decree says it was not. The traction company asserts that the council did not proceed in accordance with its statutory authority, especially in respect to giving to it (defendant) notice of the passage of the resolution, and of the time fixed for hearing objections thereto, and therefore that the assessment was void.

The charter (chapter 7, Acts 1921, amended by chapter 29, Acts 1925), requires as a preliminary step a resolution of the council declaring expediency and necessity, and at the time of the passage of the resolution there must be on file plans, specifications and estimates, which resolution, after its adoption, shall be published for two successive weeks. The resolution must fix a day on which the property owners may appear and protest or otherwise be heard. Notice of its passage must be served on the owner of each piece of property to be assessed; but if the owner cannot be found (as shown by the return of the serving officer), then the notice to such person shall be given by publication for two successive weeks in a newspaper of general circulation published within the city; and after three days from the serving or publication of notice, the council shall hear protests and then *determine if it*

*will proceed with the improvement;* and if so, fix, by ordinance, the nature of the improvement and mode of paving therefor. Then after the passage of the resolution, the work shall be let by contract to the lowest responsible bidder. When the work is completed, the abutting land is to be measured by the engineer and the assessment calculated by him, and notice thereof given by publication for two successive weeks that an assessment will be laid in order that any owner may appear for the purpose of correcting his assessment. After the assessments are laid, they are then certified to the county clerk for recordation as liens. Upon laying the assessments, the council may then issue paving certificates to the contractor to be paid by the owner of any lot or fractional part abutting on the improvement; and the amounts specified in such certificates are declared to be the personal debt of the property owner, and are liens upon his lot, or part thereof, fronting on the improvement. These, in substance, are the procedural steps required by the charter.

It is apparent that the council considered that the Interurban Railroad Company was the owner to be assessed. The traction company was not served with notice or attempted to be served with notice of any of the proceedings, and the publications made were not addressed to it. The railroad company was designated as not being found in the officer's return, and the publication of notice of passage of the resolution was addressed to it and others not found. This resolution was published on June 8th and 15th, and yet the officer's return was not made (showing the railroad company was not found) until June 16th. It is clear that the charter requires that every abutting landowner who is to be assessed must have notice of the passage of the resolution either by personal service or by publication, if he be not found. The purpose of this requirement is to give him an opportunity to be heard against carrying into effect the resolution to pave. The statute, section 67, says that the council shall sit at the time and place fixed and hear and consider objections thereto, and then determine whether or not it will proceed. But whatever the purpose may be, the law under which the council acted required it to be done. The council derives its pow-

ers from the charter and the mode of procedure therein set out must be strictly followed in all material respects. *Moundsville* v. *Yost,* 75 W. Va. 224, 83 S. E. 910. We think that notice to the property owner to be assessed and a chance to have his objections, if any, considered before the council finally determines to proceed is a material requirement of the statute, and that the city did not have power to assess his property for street improvement until he had been given such notice. Taking a lien on property for a specific sum and declaring that sum to be a personal debt against the owner without his knowledge or opportunity to resist would be a departure from the statute in a material requirement. See city of *Fairmont* v. *Bishop,* 68 W. Va. 308, 69 S. E. 802. It is argued by appellants that the defect in the matter of giving of notice, if any there was, is not jurisdictional, and that the assessment should be held to be valid although there was not notice, actual or constructive. And *Heavener* v. *City of Elkins,* 69 W. Va. 255, 71 S. E. 184, and *Avis* v. *Allen,* 83 W. Va. 789, 99 S. E. 188, are relied on. In these two cases the charters did not require notice; and it was held that where the assessment was to be made by the front foot no notice was required to make the charters constitutional. The distinction between those cases and the instant one is that here the statute requires notice. See *Heller* v. *K. & M. Ry. Co.,* decided concurrently herewith. It is further argued that to assess those who had notice, and omit from assessment those without notice, would be inequitable and work a hardship on those who had to pay, while another in like circumstances who had no notice would receive the benefit of the improvement without cost. If that argument be sound, then the requirement of notice in the statute is a mere gesture without legal effect, and might be dispensed with entirely. We are not justified in striking out of the statute that part of it. It was put there by the lawmakers for the benefit of the landowner, and must be given due weight. If that procedural step had been complied with, there might have been no improvement of Dunbar Avenue. Protests filed on April 23rd against the improvement induced the council to abandon it. "It is a fundamental principle in assessment proceedings that every re-

quirement of the statute which has a semblance of benefit to the owner must be observed, in order to give the municipality jurisdiction in the premises.'' 25 R. C. L., p. 166. Where the statute requires notice to the abutting owner of the intention of the city to make the street improvement, as expressed by passage of is resolution to improve, and further requires a day to be fixed for hearing protests, the notice is prerequisite to confer jurisdiction; and failure to give it has been held to be a jurisdictional defect which avoided the entire proceedings. *Ferri* v. *City of Long Beach*, (Cal.) 169, p. 385; *Crawford* v. *City of Detroit*, (Mich.) 135 N. W. 314; *Walsh* v. *Mayor of City of Newark*, (N. J.) 73 Atl. 522; *City of Hartford* v. *Poindexter*, (Conn.) 79 Atl. 79, 83, wherein it was said: ''The purpose of this (notice) is manifest. It gave persons interested an opportunity to object to the passage of the vote and the establishment of the proposed improvement. Such objections might be sufficient to defeat the passage of the vote. It was an essential condition precedent to the passage of the vote, and thus to the establishment of the improvement. It was by this notice that it acquired jurisdiction over the parties interested.'' And in *Re Meyer* (Minn.) 199 N. W. 749, it was held that notice of the hearing was a jurisdictional prerequisite for the council's action.

But it is argued that the traction company had actual notice of the adoption of the resolution, and of the day set for hearing protests thereon, by its appearance before the council on July 2, 1928, as averred in its answer (a judicial admission) and the exhibit filed therewith. This exhibit is a communication in writing to the council by the traction company dated December 17, 1928, protesting against the proposed assessment against it for the reason, among others, that the council had proceeded with the improvement over defendant's written objection *filed with the council on July 2, 1928*, in which writing notice was given that resistance of the assessment would be made. Evidently the traction company knew then that there was a proceeding pending before the council to make an assessment against the Charleston Interurban for street improvement. But even if it be held that the traction company had notice that ultimately the assess-

ment might be laid against it, instead of against its lessee, the protest does not import knowledge of a day set for hearing the objection of property owners. That day had already passed. The 18th of June was the time for hearing and passing upon protests and then for the council, after hearing such protests, to decide whether it would proceed with the work, and at the time of the filing of this alleged protest the council had already concluded to proceed, had advertised for bids, and on that very day (July 2nd) had formally let the contract to the contractor. The minutes of that meeting do not show the filing of the traction company's alleged protest or any action thereon. Knowledge that street improvement is being made does not estop the abutting owner from contesting the assessment on the ground of want of jurisdiction. *Moundsville* v. *Yost*, 75 W. Va. 224, 83 S. E. 910. In that case, the owner was actually served with notice and did not protest, and it was argued that he was estopped from contesting the assessment by his conduct. But it was held that because of a jurisdictional defect no lien was created by the assessment and he was not estopped even though he had stood by and saw the improvement made. It is quite generally held that where an abutting owner stands by and sees an improvement being made which confers special benefits on his property, and the payment for which must be made by assessments against his property benefitted, he is, as a general rule, estopped to resist the assessment. Abundance of authority in this and other states could be cited for that proposition. We so held in *Avis* v. *Allen*, 83 W. Va. 789, 99 S. E. 188, and subsequent cases. But that principle does not apply where there is a jurisdictional defect in the proceedings which renders the assessment void. No one is estopped from assailing collaterally a void assessment. The courts, with practical unanimity, hold that where the council is without jurisdiction to make a legal assessment, property owners, though benefitted, may deny the validity of the assessment, although they make no objection while the work is going on. Hamilton on Law of Special Assessments, section 726; *McCormick* v. *Moore*, (Mo.) 114 S. W. 40; *Chicago* v. *Sedgwick*, (Iowa) 213 N. W. 435. Moreover, the Interurban Railroad Company, the lessee,

upon being notified by the contractor that the work would proceed unless he was stopped by injunction or other process promptly notified the contractor that it would contest the proposed assessment. It is argued that this letter of the contractor was notice to the traction company because the companies bore the relation of lessor and lessee. If that be true, then the traction company gave fair warning to the contractor that he would do the work at his peril. It was not incumbent upon the traction company to enjoin work authorized without jurisdiction. And it has been held that where the landowner has done nothing to mislead the contractor and induce him to believe that he would pay for the work, but, on the contrary, has protested against the work from the beginning, equity will aid the landowner after the work is completed. Hamilton on Special Assessments, section 735.

We have come to the conclusion that the trial chancellor properly held that the assessment was not legally laid and was warranted in dismissing the bill for that reason.

Whether the city could legally lay an assessment against defendant's right of way, and whether defendant could escape an assessment because of no special benefits to it (if no benefits have been shown) assuming that there has been no procedural defect which rendered ineffectual the attempted lien and personal liability, are all questions which are unimportant to discuss.

· *Affirmed.*

Upon petition for rehearing:

In its final order the circuit court held "that said paving was not a benefit to such properties; and the court is further of opinion that upon the several questions of law presented herein the plaintiff has failed to show that an assessment was legally and lawfully laid, or that paving certificates were legally and lawfully issued, against the defendant, Charleston-Dunbar Traction Company, or the defendant, Charleston Interurban Railway Company, and has failed to show that a lien was legally and lawfully perfected against the properties of said defendants or either of them, and has failed to

show that said defendants or either of them is indebted to the plaintiff in the sum of $11,562.12, together with interest thereon * * *."

Being of opinion that the matters hereinabove discussed are determinative of the case on this review, it has not been necessary that we consider the matter of benefits. Independently of that matter, for reasons above set forth, we affirm the trial chancellor's decree dismissing the plaintiff's bill.