STERLING NATIONAL BANK & TRUST COMPANY OF NEW YORK, *As Trustee, v.* CHARLESTON TRANSIT COMPANY, *a corporation, et al.*

(No. 9371)

Submitted September 22, 1943. Decided October 5, 1943.

Lovins, Judge, absent.

Fox, Judge, dissenting.

*J. M. Woods, Howard Klostermeyer,* and *Spilman, Thomas & Battle,* for appellants.

*Glass & Lynch,* and *Blue, Dayton & Campbell,* for appellees.

KENNA, JUDGE:

This proceeding was instituted in the Circuit Court of Kanawha County by Sterling National Bank and Trust Company of New York, trustee, against Charleston Transit Company, Charleston-Dunbar Traction Company, Charleston Interurban Railway Company, and others, for the purpose of enforcing the alleged liens securing certain special assessment paving certificates issued by the City Council of the City of Dunbar upon a right-of-way thirty feet in width and about two thousand, six hundred feet in length, parallel to and abutting upon Dunbar Avenue from Industrial Avenue to the eastern boundary line of the City of Dunbar, and to reduce to decretal judgment the principal amount represented by the certificates in question, together with interest from the due date of the first of a consecutive series of certificates, none of the certificates having been met and the section of the charter under which they were issued containing an accelerating provision. From decree entered on the thirty-first day of December, 1941, by which the lien was held valid and enforceable and a decretal judgment rendered against the named defendants in the amount of $17,668.78, this appeal was allowed, the cost of the same pavement having been before this Court as a charge against the same interests in the cause of *Herbert C. Heller & Co.* v. *Charleston-Dunbar Traction Co.,* 112 W. Va. 299, 164 S. E. 853, in which it was held that the certificates then involved were unenforceable, the finding being based upon a question that will be presently discussed.

We are under the impression that the exhaustive assignments of error present the questions for decision in a manner that will permit them to be disposed of as included in the discussion of not more than four major topics, the subdivisions of which we regard as unneces-

sary to note, as we do the mechanics of their presentation to the trial chancellor.

Several years before the incorporation of the City of Dunbar, the Charleston-Dunbar Traction Company was organized, and, as a part of its system, acquired the right-of-way in question by virtue of two conveyances, the first in 1911, and the second in 1913. In April, 1921, the Legislature granted its original charter to the City of Dunbar. Subsequently, in the same year, the Charleston-Dunbar Traction Company executed a ninety-nine year lease of the Dunbar street car system including the right-of-way in question, to Charleston Interurban Railroad Company, the latter company covenanting to discharge all taxes upon the property leased. On April 23, 1925, the charter of the City of Dunbar was amended in a way that will be hereinafter referred to.

On August 13, 1928, the City of Dunbar contracted with Luigi Lemma for the paving of Dunbar Avenue from Industrial Avenue to its eastern boundary line, and on December 21st, imposed upon the owners of land abutting upon that street what will be referred to as the original assessment for the purpose of defraying its cost. In July, 1929, the first certificate to become due being in default, Herbert C. Heller & Company instituted a chancery cause for the purpose of enforcing in full the liability thereby represented with the result that the certificates were held unenforceable in the *Heller* case, so that, in October, 1932, Herbert C. Heller & Company petitioned the Dunbar City Council under the terms of the amended city charter then in effect to impose a reassessment upon the owners of the right-of-way in question with the result that in the following January the reassessment was laid in the name of Charleston-Dunbar Traction Company under the holding in the *Heller* case, in spite of the fact that the Charleston Interurban Railroad Company was then operating an interurban transportation system upon lines traversing the right-of-way under a ninety-nine year lease.

In 1933, the Charleston Interurban Railroad Company and its two subsidiaries, as they had then come to be, Charleston-Dunbar Traction Company and Kanawha Valley Traction Company, had become involved financially to an extent that those interested believed required their reorganization. This was done in a non-adversary chancery proceeding instituted against the three corporations by Roxalana Land Company in the Circuit Court of Kanawha County, the ultimate outcome of which proceedings was the transfer and conveyance of their entire holdings to Charleston Transit Company, no provision being made in that proceeding for discharging the indebtedness represented by the paving certificates forming the basis for this proceeding.

The principal question here involved, we believe, and that upon which the greatest number of assigned points of error turn is: Can the right-of-way of a street railway company under the specific wording of the charter of the City of Dunbar be subjected to a special assessment covering its pro rata part, on a front footage basis, of the cost of paving a public highway or street upon which that right-of-way abuts? The charter, speaking of the abutting property, provides that "such owners and lots be assessed", so that consequently it becomes necessary to determine whether the word "lots" as so used is inclusive of a right-of-way, and if so, whether the occupant thereof under a ninety-nine year lease can be regarded as its "owner". We have no hesitancy in replying affirmatively to both queries. There have been many cases before the courts of this country for the purpose of dealing with assessments of this kind, proportioned on the basis of the abutting front footage, and while there is some conflict in the holdings, there is no doubt that the clear weight of authority, including the Supreme Court of the United States, sustains the assessment of rights-of-way, some of them described as lots. *Louisville & Nashville R. Co.* v. *Barber Asphalt Paving Co.,* 197 U. S. 430, 25 S. Ct. 466, 49 L. Ed. 819; 116 Ky. 856, 75 S. W. 269; *Town of Clayton* v.

*Colorado & So. Ry. Co.* 51 F. (2d) 977, 82 A. L. R. 417,
and note; *Minneapolis etc. Ry. Co.* v. *City of Minot,* 51
N. D. 313, 199 N. W. 875, 37 A. L. R. 211, and note. See also,
*Choctaw etc. Railroad Co.* v. *Mackey,* 256 U. S. 531, 41
S. Ct. 582, 65 L. Ed. 1076.

As to who can be regarded the owner, we are con-
fronted at the outset with construing that term in con-
nection with the context, and with the subject matter to
which it relates. That being so, it seems to us quite clear
that it is not confined to the fee simple title, but that,
speaking generally, it necessarily includes any title
which would confer a complete right of user during the
estimated life of the contemplated improvement, which, in
this case, is the pavement of a street, the life of which
would be spent many years before the expiration of a
ninety-nine year lease. True, this Court's opinion in the
*Heller* case refers inferentially to the fact that the lessee
under this identical lease was not properly proceeded
against as the owner of the right-of-way, but that the
ownership was held by Charleston-Dunbar Traction Com-
pany, as the lessor. However, that question has gotten
beyond the troublesome stage, because both companies
are now properly before the Court under the decision in
the *Heller* case as the owners in common of the land as-
sessed. That case, having turned upon a procedural ques-
tion, we do not consider as having a binding effect other-
wise. We believe that it is unnecessary to decide whether
the deed to Charleston-Dunbar Traction Company con-
veyed title in fee or simply an easement. We believe that
the fee is certainly an assessable interest unless it other-
wise appears, and that an easement also is an interest
subject to a special assessment. See *Louisville & N. R.
Co.* v. *Barber,* 116 Ky. 856, 76 S. W. 1097; *St. L.-San
Francisco Ry. Co.* v. *City of Tulsa,* 15 F. (2d) 960.

Under this general heading, the appellants advance the
contention that the property held by them received no
special benefit from the paving of Dunbar Avenue, and
consequently, that subjecting their right-of-way to the

lien securing it would result in the taking of private property without adequate compensation, and would amount to confiscation. We can only say that we have carefully examined the record before us on this particular question, and that we believe the assessment was imposed after a sufficient hearing before the Dunbar City Council, and that that hearing included the question of special benefits. The cases are well nigh unanimous in holding that the burden of proof rests upon the person asserting the absence of special benefits in the first instance. See *Bowling* v. *City of Bluefield,* 104 W. Va. 589, 140 S. E. 685. That being so, certainly after the city council, following due deliberation, has laid an assessment based upon the existence of special benefits which the circuit court has declined to disturb, the presumption attached to the result in this Court must become stronger. Of course, determination of the question of benefits is not to be confined to the present use of the property involved. Neither is it to be considered as based upon the depth of the abutting land, since the points of a triangle then would lead to insoluble complications. We think that the appellants have no factual showing to establish the absence of special benefits, and we believe that their contention that their user of the property as a right-of-way is governing, is not sound because that is an exclusive use so that any benefits in the proper sense could not be said to be general, the property not being used for general purposes.

The appellants further contend that they were entitled to receive actual notice of a time and place at which they might be heard in opposition to the paving project before work thereon was begun and that they received no such notice. They admit that they were notified in advance of the laying of the so-called "re-assessment", but assert that since the work had then been completed such notice was not a compliance with the provisions of the Charter of the City of Dunbar and that a special assessment laid in the absence of adequate notice is in viola-

tion of the due process clause. We do not believe that a hearing on the question of the nature and method of the work to be done is necessary under the due process clause. Those questions are up to the levying body. Otherwise there would be endless disagreements with nothing accomplished. It is otherwise with 'questions touching the regularity of the assessment such as special. benefits, the accuracy of the measurements upon which the assessment is based, the correctness of its computation and other questions affecting the specific property. These matters are not foreclosed after the beginning of the work, but may be raised at any time before the assessment is imposed. For that reason, notice of the laying of the assessment after the work is done satisfies the due process clause. *Utley* v. *St. Petersburg,* 292 U. S. 106, 54 S. Ct. 593, 78 L. Ed. 1155. Objections going to the kind of project, the nature of the work, the materials to be used and so forth, decided when work is started, are of too general a nature to require personal notice. As to complying with the Dunbar charter provisions, it is true that the clause dealing with the first or original assessment does require a hearing and notice before construction is started. That, however, is not true of Section 86, providing for the reassessment. That section imposes upon the city council the duty, after notice and hearing within two years after an assessment has been declared invalid by any court, to proceed to lay another assessment for the same purpose, if the assessment has been found void or voidable for error or because "made against the wrong person". It will be seen that an assessment that is an absolute nullity is expressly included in those that may be replaced after the lapse of more than two years.. Clearly, it was not the legislative purpose to limit the re-assessment to the curing of defects which would not invalidate. As is indicated by the extension of time to two years, the law makers certainly did not intend the commencement of work on the project to await a hearing concerning the reassessment. On the other hand,

the Legislature having known that compliance with the due process clause requires only notice of and a hearing on the actual laying of the special assessment, we believe they intended to provide for the corrected re-laying of a void assessment after the work has been done. See *Heavner* v. *City of Elkins,* 69 W. Va. 255, 71 S. E. 184.

The appellants assert that the decree of the circuit court which was appealed from in the case of *Herbert C. Heller & Co. v. Traction Company,* 112 W. Va. 299, 164 S. E. 853, definitely decided that there were no special benefits that would attach to the right-of-way involved and that since that decree was affirmed on appeal, the absence of special benefits is now a matter which is *res adjudicata* as between the parties appearing of record. The appellees reply to this contention by saying that while the reason for the affirmance of this Court as stated in its first opinion was clearly a different ground than the absence of special benefits, the question which the appellants now raise was anticipated when the petition for a rehearing was filed by the appellant, Heller & Co., and that this Court, in an additional memorandum, expressly stated that the question of special benefits was not to be considered as having been determined. The finding of this Court in the *Heller* case apparently was based upon the lack of notice which was considered a sufficient justification for the dismissal of the cause in the circuit court. Viewing it as a proceeding resulting in an invalid assessment due to the lack of "jurisdiction", it is rather difficult to see how that proceeding could lead thereafter to a binding finding as to the non-existence of special benefits. Certainly, the question would have to remain open in so far as the interests of the persons not notified were concerned, and if that be so, could the circuit court's finding that there were no special benefits bind one person interested in the property and leave that question open as to another interest in the same property? Or would all persons interested in the property improved be necessary parties in order to foreclose that question? We believe

that there is no question but that the order of this Court entered pursuant to the appeal of a chancery cause is to be construed as the order that this Court is of opinion the trial chancellor should have entered, and if that be so, the question of the existence or non-existence of special benefits was not decided in the *Heller* case.

On the other hand, the appellees take the position that the appellants are now estopped to raise the question of the absence of special benefits, due to the fact that the city council of the City of Dunbar in laying the so-called reassessment against their property necessarily found that special benefits did attach, and that although the city charter made no provision concerning a review of that finding, a writ of certiorari from the circuit court was nevertheless available, and that if not so pursued, the appellants' right to reopen that question has been abandoned, and the city council's finding is now binding. We think not. It may be that the defendants here could have maintained an application for a writ of certiorari in the circuit court, but it is also true that under our practice chancery will enjoin the enforcement of an entirely void assessment. *Ohio Fuel Oil Co.* v. *Price,* 77 W. Va. 207, 87 S. E. 202; *Clarksburg Northern Railroad Co.* v. *Morris,* 76 W. Va. 777, 86 S. E. 893; *Turkey Knob Coal Co.* v. *Hallanan,* 84 W. Va. 402, 99 S. E. 849; *Winifrede Coal Co.* v. *Board of Education,* 47 W. Va. 132, 34 S. E. 776. A special assessment is void if shown to be arbitrary and if the presumption of benefits is overcome and the amount of the assessment is plainly shown to exceed the value of the special benefits resulting from the improvement. See 25 R. C. L. p. 138 et seq., secs. 55-66. Also *Wagner* v. *Baltimore,* 239 U. S. 207, 36 S. Ct. 66, 60 L. Ed. 230. Therefore, notwithstanding the probable availability of a writ of certiorari, since neither the charter nor any statute expressly provides a specific remedy to which the defendants would be restricted, we are of the opinion that with two remedies available, the remedy to be applied was a matter of election, and that if injunction would lie

to prevent the enforcement of the special assessment as being utterly void, the same question can now be raised as a matter of defense.

As to whether the lack of special benefits has been affirmatively shown by the evidence adduced by the defendants to the extent of establishing that the amount of the assessment exceeds the value of the benefits conferred by the improvement, we can say only that we do not believe that question can be properly confined to the use of the land involved as a street car right-of-way, but that it must extend to the possible general use of the property. As a matter of law, we do not believe that the lack of benefits has been shown by any of the defendants, and therefore does not affect the question of personal liability as between them, each having a sufficient equitable interest to entitle each of them to discharge the assessment and prevent a forced sale of the property, and therefore a sufficient interest to sustain personal liability. The question of whether the business of the railroad company would be better with Dunbar Avenue unpaved than with it hard-surfaced, we believe, is almost entirely speculative, and we see no basis for comparison as between the railroad company and the average lot owner when it comes to distinguishing general benefits to the residents of Dunbar from special benefits to the property concerned, since the street car company was vested with an exclusive right, leaving no room for comparison.

On the question as to whether the plaintiff has a right to a personal decree, the principal point urged against that right is the fact that the original charter of the City of Dunbar did not impose a personal liability, and that section 86 of that charter, providing for the so-called reassessment, not being referred to in the amendment contained in the Acts of 1925, specifically providing for personal liability, it was the plain purpose of the Legislature to limit the effect of a reassessment to the perfection of the liens against the abutting property, and not to have it include the personal liability of the property

owner under the rule that tax statutes are to be strictly interpreted with doubts resolved in favor of the taxpayer. We do not agree with that construction. We think that it was the plain purpose of the Legislature in enacting section 86 of the original Dunbar charter to provide a means of perfecting the special assessment liability *in toto*. The Legislature was charged with that knowledge when it amended the charter in 1925 providing for personal liability. Had it been the legislative purpose to restrict the effect of a succeeding assessment, certainly that purpose would not have been permitted to rest upon implication alone.

The defendants contend that section 88 of the Dunbar Charter, as amended in 1925, is not effective because the title to the 1925 act, by referring to the section to be amended by number, referred to the wrong section number in the original charter, and consequently, did not comply with article six, section thirty of the Constitution of West Virginia, relating to the title of acts of the Legislature. We are, of course, dealing with a special act of the Legislature, and one with which the people at large are not concerned. The 1925 act plainly states that it is an amendment to the city charter of Dunbar, and proceeds to subdivide that general title by referring to the sections intended to be amended by number only. This, of course, would necessitate an examination of, or familiarity with, the original charter in order to elaborate or understand the meaning of the reference, and would not be a statement in plain terms of the act's purpose. We think, therefore, that the numerical references are used largely for the purpose of being an easy mode of making a detailed examination, and are not an indispensable part of the act's title. We fail to see how the mistake that was undoubtedly made could be misleading, for the wording of the amendment and of the act, considered together, we think, are sufficiently clear. Apparent clerical errors do not invalidate legislation. 25 R. C. L., Statutes, sec. 227.

It is urged by the defendant that the five-year statute of limitations (Code, 55-2-6) has run against any personal liability that is attached to and a part of the original assessment, and that if the trial court's decree treating it as a part of the second assessment and fixing the running of interest at that time is held to be an error based upon the fact that the liability attaches as of. the date of the original assessment, the claim is barred. In considering this subject, it is to be remembered that this is a proceeding in chancery, not at law, and furthermore, that the liability attached as a result of the exercising of the taxing power, and is therefore not contractual. Conceding, however, for the purpose of discussion only, that the five-year statute does apply, we are of the opinion that the finding of the circuit court to the effect that the personal liability attached when the second assessment became effective is entirely free from error, because we do not believe that that liability can ante-date the existence of a valid lien, and it was held in the *Heller* case that the original assessment did not create a lien of that nature. That being our opinion, it is unnecessary to discuss the question of whether the statute of limitations is operative in a chancery court, and, of course, under the facts before us, laches on the part of the lienor is not urged.

As to the effect of the case of Roxalana Land Co. v. Charleston Interurban Railroad Company et al., in the circuit court of Kanawha County, to which no person interested in the ownership of the paving certificates was made a party and in which an uncontested final decree was entered authorizing the transfer, in effect subject to whatever liability might attach by reason of paving certificates, of the property to Charleston Interurban Railroad Company, Charleston-Dunbar Traction Company and Kanawha Valley Traction Company to Charleston Transit Company without providing for the actual payment of the paving certificates, which were then a recorded charge on the property in question, or for the discharge of the common indebtedness of the defendant corporation, we

can say only that we believe the principle invoked has been settled by the case of *Boyd* v. *Northern Pacific Railway Company,* 228 U. S. 482, 33 S. Ct. 554, 57 L. Ed. 931, dealing with a non-controversial reorganization proceeding in chancery, and holding that the claim of a common creditor not made a party and not therein provided for could be made in chancery to follow the assets. It is true that the *Boyd* case, in certain of its aspects, can be differentiated from the case under consideration, but we believe that the general principle involved is quite closely analogous, and that the discussion of the *Boyd* opinion and its findings deal with the same principle with which we are here concerned.

We think that the two points of error based upon the taking of private property without just compensation and without due process of law are not pertinent to the facts established by the record before us. It may well be that from the standpoint of the landowner, special assessments for municipal improvements are a harsh process, but, on the other hand, they are so far the best attempt to rest the burden of payment with the resultant particular benefits upon a certain class of property and persons. Without them, the outlying land of a municipality would have very little chance for development. The constitutionality of the special assessment system has been tested in many cases, and without going into any exhaustive analysis of their discussion and holding, we wish to say that our conclusion, we think, is borne out by the cases involving easements and rights-of-way hereinbefore cited.

*Affirmed.*

Rose, Judge, (on rehearing):

I withdraw the note of partial dissent filed by me upon the original decision of this case, for the reason that upon further study I am of opinion that the matters discussed therein were not presented to or acted upon by the court

below, thereby making their consideration unnecessary and perhaps improper here. Also I assent to the affirmance of the personal recovery against the appellants solely by reason of the coercion of former decisions of this Court on that question.

Fox, JUDGE, dissenting:

I find myself unable to concur in the decision of the majority, for the reason that, in my opinion, the failure of the City of Dunbar to give to The Charleston-Dunbar Traction Company notice that it proposed to consider embarking upon the paving project out of which plaintiff's claim arises, before it finally decided to engage in such undertaking, destroyed any right of the city to lay an assessment therefor against abutting property owners, whether imposed by an original assessment or as a reassessment, as was done in this case. Holding this view, it is unnecessary for me to discuss other points raised in the case and considered in the majority opinion.

The original assessment, now sought to be collected as a reassessment, was before this Court in *Heller* v. *Charleston-Dunbar Traction Co.*, 112 W. Va. 299, 164 S. E. 853. In that case this Court held:

> "The Charter of the City of Dunbar (Municipal Charters, Acts, 1921, Chapter 7), requires the council when proceeding to pave its streets, to give notice to the abutting land-owners of the passage of resolution to pave, which must fix a day on which property owners may appear and protest, or otherwise be heard. Then, after hearing protests, it must determine whether it will proceed with the paving. An assessment against an abutting landowner without notice to him of the initial proceedings, express or implied, and who has had no opportunity to be heard is invalid."

In the opinion filed in that case it was pointed out that the Charter of the City of Dunbar required, as a

preliminary step, a resolution of the council, declaring the expediency and necessity for the proposed work; and that at the time of the passing of the required resolution there should be on file plans, specifications and estimates; that a day be fixed therein on which abutting property owners might appear and protest. Notice of the passage of the resolution was required to be served on interested property owners, if they could be found, and, if not found, publication of such notice was provided for. After this notice was served or published, the council was required to meet for the hearing of protests, and it could then be determined whether the proposed improvement should be proceeded with and, if it was decided to do so, then to fix by ordinance the nature of the improvement, and the manner of paying therefor. In that case this Court said:

"It is clear that the charter requires that every abutting landowner who is to be assessed must have notice of the passage of the resolution either by personal service or by publication, if he be not found. The purpose of this requirement is to give him an opportunity to 'be heard against carrying into effect the resolution to pave. The statute, Section 67, says that the council shall sit at the time and place fixed and hear and consider objections thereto, and then determine whether or not it will proceed. But whatever the purpose may be, the law under which the council acted required it to be done. The council derives its power from the charter and the mode of procedure therein set out must be strictly followed in all. material respects. *Moundsville* v. *Yost*, 75 W. Va. 224, 83 S. E. 910. We think that notice to the property owner to be assessed and a chance to have his objections, if any, considered before the council finally determines to proceed is a material requirement of the statute, and that the city did not have power to assess his property for street improvement until he had been given such notice. Taking a lien on property for a specific sum and declaring that sum to be a personal debt against the owner without his

knowledge or opportunity to resist would be a departure from the statute in a material requirement."

Further the Court said:

"If that procedural step had been complied with, there might have been no improvement of Dunbar Avenue".

and,

"Where the statute requires notice to the abutting owner of the intention of the city to make the street improvement, as expressed by passage of its resolution to improve, and further requires a day to be fixed for hearing protests, the notice is prerequisite to confer jurisdiction; and failure to give it has been held to be a jurisdictional defect which avoided the entire proceedings".

The original assessment was held invalid in that case, and that decision is not questioned in the case at bar.

But it is said that the original assessment being void, an assessment can be laid under the provisions of Section 86, Chapter 7, Acts of the Legislature, Municipal Charters, 1921, the pertinent provision of which reads as follows:

"In case of the construction of any pavement, sewer, sidewalk or other permanent improvement under the provisions of this act, when an assessment shall be void or voidable by reason of errors, irregularities or defects in the proceedings under which such improvements shall have been made against the wrong person, it shall be the duty of the council, within two years after any court shall have declared such assessment invalid, to cause notice to be given to any person against whom the cost of such improvement might properly have been assessed under this act, of its intention to lay such assessment against him, and fixing a time and place at which he may appear and show cause, if any, why such assessment should not be laid".

The section does provide that the assessment may be made, when a former assessment is void or voidable by reason of "errors, irregularities or defects in the proceedings", or "where the assessment has been made against the wrong party". But does this mean that such an assessment can be made against a person, firm or corporation against whom, by reason of lack of notice, no assessment could have been laid in the first instance? I think not. Notice to property owners affected before a decision to undertake the work, was, in my opinion, necessary to vest in the council power and authority to lay any assessment at any time. If the council could undertake the work without notice, given in advance of such undertaking, and then, years later, lay an assessment on abutting property owners to meet the cost thereof, of what force or value is the charter provision that notice must be given to such property owners before the work is undertaken? In my opinion, Section 86 does not authorize the assessment sought to be enforced. I think it was only intended to provide for what may be termed a "reassessment" in cases where the necessary notice had been given and the council had power, authority and jurisdiction to make the assessment in the first instance, but through some error, irregularity or defect it failed to make a valid assessment, or an assessment against the wrong party. I do not think it was intended to cover cases where the right to lay the assessment never existed.

I would reverse the decree of the circuit court and refuse to enforce the assessment.