Woodward Governor Company and Chicago and North Western Railway Company, Appellees, v. City of Loves Park, Appellant.

Gen. No. 10,267.

Opinion filed November 12, 1948. Released for publication December 1, 1948.

T. O. PRATHER, of Rockford, for appellant; FREDERICK H. HAYE, of Rockford, of counsel.

CHARLES S. THOMAS, of Rockford, and NELSON TROTTMAN, of Chicago, for appellees.

MR. JUSTICE BRISTOW delivered the opinion of the court.

The plaintiffs herein sought by their proper petition to have about forty acres of land disconnected from the City of Loves Park which is situated in Winnebago county, Illinois. Section 7–42 of the Cities and Villages Act of 1941 [Ill. Rev. Stat. ch. 24, par. 7–42; Jones Ill. Stats. Ann. 21.1233], which is the statutory basis for such relief provides that the "OWNER OR OWNERS OF RECORD" of any area of land consisting of one or more tracts within the corporate limits of a municipality which meets certain specifications as to the extent and location may be disconnected from the municipality by a petition filed in either the county or circuit court where the land is situated. The Act provides that if the court shall find the allegations of the petition true, the disconnection of the area shall be ordered. The circuit court on January 5, 1948, de-

cided in favor of plaintiffs and ordered a disconnection of petitioner's property as prayed.

There is no controversy as to the facts. The Woodward Governor Company owns approximately 25 acres of land located within the corporate limits of defendant City of Loves Park. The eastern boundary of their property abuts on the right of way of the Chicago and North Western Railway Company, the other petitioner. The latter tract of land embraces about 15 acres.

The sole question for this court's determination is whether the Chicago and North Western Railway Company is an "OWNER" of the land they seek to have disconnected. Does the title that they hold to the real estate in question bring them within the meaning of the term "OWNER" as contemplated by the Illinois legislature when they enacted the aforementioned section 7–42 of the Cities and Villages Act? The present railway company are successors in title to the Kenosha and Rockford Railroad Company. Each of the deeds provided that the grantors do "give, remise, release, convey and quitclaim to the Kenosha and Rockford Railroad Company for the purpose of constructing a railroad thereon and for all uses and purposes connected with the construction and use of said railroad, the right of way, use and occupancy for said railroad over and through the following land. (Description) . . . To have, hold and enjoy the land above described with the appurtenances unto the said party of the second part and their assigns forever, for any and all uses and purposes in any way connected with the construction, preservation, occupation and enjoyment of the said railroad provided, however, that if said railroad shall not be constructed over and through the said premises within five years or if the said party of the second part or their assigns shall at any time thereafter cease permanently to use said railroad so to be constructed and the same shall be abandoned or

the route thereof changed so as not to be continued over said premises, then, in that case, the said land hereby granted shall revert to the said party of the first part, their heirs or assigns.''

Since the passage of the Cities and Villages Act in 1941, our reviewing courts have had no occasion to interpret the meaning of the words ''owner or owners of record.'' About 50 years ago the Illinois Appellate Court of the Third District, *Vance v. Rankin*, 95 Ill. App. 562, approached the question under consideration more nearly than any other authority in Illinois. We shall advert to it later.

I think we can agree at the outset that the Chicago and North Western Railway Company did not have a fee simple title to the land described in their amended petition, but that they had an easement to so much of the land as they found necessary to use. In the case of *Illinois Cent. R. Co. v. Houghton*, 126 Ill. 233, the railroad brought an ejectment proceeding, claiming that the following clause created a fee in the premises described therein: ''for the purpose of constructing, maintaining and operating thereon a single or double track railroad with all its necessary appurtenances and for all uses and purposes connected with the construction, repair, maintenance and complete operation of said railroad, the right of way over and through said tract—for all lawful uses and purposes incident to a full and indefeasible title in fee simple or in any way connected with the construction, preservation, occupation and sole enjoyment of said railroad and lands of the width aforesaid.'' The Supreme Court therein held that the deed did not vest an estate in fee, and that it conveyed no more than an exclusive right to possession for certain purposes. Other cases in Illinois holding similarly are *Walker v. Illinois Cent. R. Co.*, 215 Ill. 610; *Branch v. Central Trust Co.*, 320 Ill. 432; *Joseph v. Evans*, 338 Ill. 11; *Magnolia Petroleum Co. v. West*, 374 Ill. 516. The case of *Tallman v. East-*

*ern Illinois & Peoria R. Co.*, 379 Ill. 441, uses the following language: "The words 'right of way' denote a tenure by which land is held; they are descriptive of the easement right, and not the land to which it is affixed. We are of the opinion the description of the estate contained in the granting clause is that of a right of way easement, and not a fee-simple interest in the land within the described boundaries. Such construction gives effect to all of the words in the deed. Any other constructions would require us to disregard words necessary to determine the estate granted." It appearing, therefore, that the authorities having uniformly held that language similar to that employed in the deeds in question does not convey a fee simple title, it is the contention of the appellant that the North Western Railway Company is not the "owner" of the lands described in their petition and therefore not entitled to the relief sought in their petition.

To throw some light upon the question as to what the legislature had in mind when they used the term "owner," appellant refers us to the case of *Jarrot v. Vaughn*, 2 Gilm. 132, which involved the construction of the statute which made provision that the owner of land from which timber was cut without his permission might have an action of debt against the person cutting the timber. The court said that the word "owner" had been repeatedly determined to mean a fee simple interest and any proof of a lesser estate would not meet the requirements of the statute. The appellant cites other cases which do not appear to be any more helpful.

The case principally relied upon by appellant is that of *Warren v. Lower Salt Creek Drainage District*, 316 Ill. 345. In that proceeding the petitioner sought to dissolve a drainage district organized under the Levee Act. This Act provided in order to obtain such relief that there be a petition signed by a majority in number

of all "the land owners" of such district, and by those "owning" more than one-third in area of the lands in the district. One of the questions raised in that case was whether or not the holder of a life estate followed by a contingent remainder was a "landowner" under the statute. In that connection the court had this to say: "The word 'owner' is *nomen generalissimum,* and its meaning is to be gathered from the connection in which it is used and from the subject matter to which it is applied, and when used in a statute the obvious nature and purpose of the statute may indicate its meaning. (*Coombs v. People,* 198 Ill. 586; *Guild v. Prentis,* 83 Vt. 212, 74 Atl. 1115; *Merrill Railway and Lighting Co. v. City of Merrill,* 119 Wis. 249, 96 N. W. 686.) While the meaning may vary according to context and subject matter, when applied to real estate without any qualifying words the word 'owner,' in common as well as legal parlance, means an owner in fee simple. (*Bowen v. John,* 201 Ill. 292; *Jarrot v. Vaughn,* 2 Gilm. 132; *Illinois Mutual Fire Ins. Co. v. Marseilles Manf. Co.,* 1 id. 236; *Johnson v. Crookshanks,* 21 Ore. 339, 28 Pac. 78.) The word 'owner' as used in the Local Improvement Act has been held to mean an owner in fee simple. (*Merritt v. City of Kewanee,* 175 Ill. 537.) One having a life estate in lands is an owner of land and may be counted as one in determining whether a majority in number of the landowners have signed the petition. (*Cosby v. Barnes,* 251 Ill. 460.) But manifestly a life tenant is not the owner of all the land in which he owns a life estate. This being true, the signature of the life tenant does not by itself represent the land in which he holds the life estate. (*Mayor of City of Baltimore v. Boyd,* 64 Md. 10, 20 Atl. 1028; *Colquitt v. Stevens,* 111 Ark. 314, 163 S. W. 1141); but where the tenant and the person or persons in whom the fee is vested as remaindermen or reversioners sign the petition the lands are represented, and the full acreage

may be counted in determining whether more than one-half in area of the lands is represented by the petitioners.'' Following this authority it is the contention of appellant that since the North Western Railway are only the owners of an easement and since they do not join with them in their petition the owners of the fee, that the entire ownership is not represented in the petition and therefore under the *Warren* case, *supra,* the requirements of section 7–42 of the Cities and Villages Act are not met. If we should hold that the petition of the North Western Railroad cannot be sustained, then the other petitioner must fail because the Woodward property would not be ''located on the boundary of the municipality.''

Appellee in their brief do not find occasion to disagree with appellant in their contention that the North Western Railroad only have an easement. Many authorities are cited that variously characterize such an easement as being equivalent to a fee so long as the land is used for the purposes described in the instrument of conveyance. In the case of *Hurd v. Rutland & Burlington R. Co.,* 25 Vt. 116, the court said: ''If that interest is regarded as mere servitude or easement, the land nevertheless becomes so far the property of the corporation that their right is exclusive in its use and possession during its existence, as much so as that of the owner or occupant of the adjoining land. Those from whom the land was taken retain no right to its use or occupation for pasturage or otherwise. The object for which it is appropriated and used is wholly inconsistent with such right on the part of the former owner, as well as with that security to themselves and safety to the public which is necessary to enable the corporation to enjoy the franchises granted by their charter.'' In the case of *Troy & Boston R. Co. v. Potter,* 42 Vt. 265, this language was employed: ''Although the right of the railroad company is but an easement, and not a fee, this does not

preclude their having the sole and exclusive posses-
sion of the land while in the exercise of that easement.
The fact that, upon the abandonment or surrender of
their road and charter, the land would revert to the
former owner, does not curtail their right to its ex-
clusive use if necessary.''

Believing as we do that there is no uniform guide
as to what meaning shall be ascribed to the term
''owner,'' and that consideration must be given to the
nature and purpose of the statute involved, let us see
if we can find a logical answer to our problem by ex-
ploring that inquiry. Referring back to the language
used in the *Salt Creek* case, the Supreme Court said
''the word 'owner' is *nomen generalissimum*, and its
meaning is to be gathered from the connection in which
it is used, and from the subject matter to which it is
applied, and when used in a statute the obvious nature
and purpose of the statute may indicate its meaning.''
In the case of *Coombs v. People*, 198 Ill. 586, in de-
ciding that the holder of a tax deed was not required
to disclaim all benefit from it in order that he be not
deemed estopped to deny, in defense of an action in
debt for taxes, that he was the owner of the lots, the
Supreme Court said in its opinion, that the word
''owner'' as applied to land ''has no fixed meaning
which can be declared to be applicable under all cir-
cumstances, and as to any and every enactment.'' Al-
though usually denoting a fee simple estate, the court
said in the *Coombs* case ''it has been defined to include
one who has the usufruct, control or occupation of
land with a claim of ownership, whether his interest
be an absolute fee or a less estate.'' Another decision
with approval cited in the *Salt Creek* case which can
profitably be considered at this time is that of *Merrill
Railway & Lighting Co. v. Merrill*, 119 Wis. 249, 96
N. W. 686. In this case a street railway company
sought exemption from local taxation for a tract of
land that was leased to it for a period of only five

years. There was a law in Wisconsin that provided for taxation of street railway companies in the form of a charge graduated upon gross earnings in lieu of other taxation, and provided further that all personal property, franchises, "and real estate owned and actually and necessarily used" in the operation of the business should be exempt from taxation. The city claimed that this exemption was confined to real estate absolutely owned in fee, while the street car company contended that the word "owned" should be extended to include property held by lease. The Wisconsin court in passing upon the meaning of the word "own" employed this language: "It cannot be denied that the word 'own' is used both colloquially and in the law to designate a great variety of interests in property. As titles and rights to real property vary from the absolute and unqualified fee simple to that of the mere occupant, so the word 'own' or 'ownership' varies in its significance. For most practical purposes the tenant under a lease for 1,000, or even 100 years, exercises as complete control as the holder of the fee simple." And the court further observed that "the instances where the word 'own' has been held satisfied by something less than the absolute and entire ownership are far too numerous to permit citation." Concluding their analysis of the subject, the court said: "Thus it appears very clearly that the word 'owned' is not a technical term; that it is a general expression to describe a great variety of interests, and may vary in significance according to context and subject-matter. That being so, we are constrained by the rule of the Wisconsin authorities to give to it in the statute now under consideration as liberal construction as it will reasonably bear in favor of the respondent company, which has paid the full license fee imposed by law in lieu of all other taxes."

Another field of legal construction may well be considered that we may appreciate another example of

the expanded concept that courts have placed upon the term "owner." Under a charter provision that "owners" of abutting property may be assessed for a paving improvement, the rule generally is that a railway company having a right of way only is nevertheless subject to special assessment as an "owner" of abutting property. In the case of *Sterling Nat. Bank & Trust Co. of New York v. Charleston Transit Co.,* 126 W. Va. 42, 27 S. E. (2d) 256, the court said it had no hesitancy in affirmatively answering the inquiry whether the occupant of a right of way under a 99 year lease could be regarded as its "owner." The court in that decision said that in determining who can be regarded as the owner it was confronted "with construing that term in connection with the context and with the subject matter to which it relates," adding that it seemed "quite clear that it is not confined to the fee simple title, but that, speaking generally, it necessarily includes any title which would confer a complete right of user during the estimated life of the contemplated improvement."

It has been uniformly held that no distinction is made in special assessment proceedings where railroad rights of way are involved between cases where the land is held in fee simple title and cases where the railroad's title is of a lesser character. It was held in the case of *Cicero & Proviso St. Ry. Co. v. City of Chicago,* 176 Ill. 501, that a street railway company which did not own the fee but merely had the right to occupy and use a street was subject to a special assessment for a sewer. Sustaining this line of thinking, the Supreme Court of Washington in the case of *Northern Pac. Ry. Co. v. Seattle,* 46 Wash. 674, 91 Pac. 244, said: "Although the appellant may not hold the fee simple title, there is no reasonable or immediate probability that it will abandon the land. Its use will doubtless be perpetual. Appellant is therefore for all practical purposes the substantial owner. The

fee, subject to its use and easement, is of but little value, if any.'' In the case of *Ange & Forest v. Atlantic Coast Line R. Co.*, 159 N. C. 547, 75 S. E. 796, the North Carolina Supreme Court said that even if only owners of land were to contribute to the maintenance of a drainage canal, this would not relieve the railroad company, ''as the term 'owner of land' may not include those who have an absolute, ownership in fee, but those who have the proprietorship and control of the land.''

We deem it needless to belabor this opinion with a further consideration of the many cases that so clearly indicate that one may properly be considered ''an owner'' without having a fee simple title and that in construing the meaning of the word ''owner'' as used in a statute regard must be had for the purposes of the Act, the object that it seeks to accomplish as well as all the surrounding circumstances.

The statutory Act under consideration was considered by our Supreme Court wherein its constitutionality was upheld. *Punke v. Village of Elliott*, 364 Ill. 604. Therein the court had occasion to indicate the purposes of the Act under consideration: ''The legislature has determined that an evil exists in compelling owners of tracts of twenty acres or more, not subdivided and which border a city or village, to pay taxes for urban benefits.'' In the case of *Wolbach v. Village of Flossmoor*, 329 Ill. App. 528, the court said that the purpose of the Act under consideration was to facilitate the disconnection of unsubdivided tracts of twenty acres or more which do not possess any characteristics of city or village property and to this end should be liberally construed.

As we have indicated heretofore, the case of *Vance v. Rankin*, 95 Ill. App. 562, the Appellate Court for the Third District held under a statute identical with the present one so far as it touches the point here involved, that the term ''owner'' was not confined to

the holder of a fee simple title and accordingly that a railway company holding its right of way not in fee simple but for railway purposes was an owner. The purpose of the legislation under consideration was stated in the following language: "The evident purpose of the authors of that legislation was to provide a means for the holders of outlying territory to escape the burdens of municipal taxation and enjoy their lands free from certain restrictions and regulations which municipal authorities may impose upon its citizens. We cannot think that they intended to close the door to the remedy provided against tenants for life and all others holding an estate less than a fee simple. The word 'owner,' when applied to real estate, is not confined to the holder of a fee simple title, and, unless there is something in the act to the contrary, the legislature will be understood as using the word in its popular sense."

The tax laws of Illinois do not accord any practical value to the reversionary interests of railroad properties where the titles are similar to the one in the instant case. The land included in the conveyance to the Railway Company's predecessors is taxed to the Railway Company under the provisions of the State Revenue Act providing for the taxation of railroad properties. "Section 79 of the Revenue Act (Ill. Rev. Stat., ch. 120, par. 560 [Jones Ill. Stats. Ann. 119.576]) defines the term 'operating property' to 'mean and include all tracks and right of way,' 'structures and improvements' on such right of way, rights and franchises, rolling stock and car equipment, 'and all other property, real or personal, tangible or intangible connected with or used in the operation of the railroad . . . . .' Section 80 (Ill. Rev. Stat., ch. 120, par. 561 [Jones Ill. Stats. Ann. 119.577]) requires the Department of Revenue to assess all property owned or used by railroad companies operating within the state. Section 86 (Ill. Rev. Stat., ch. 120, par. 567 [Jones Ill.

Stats. Ann. 119.583]) requires the full fair cash value of operating property to be listed and taxed in the several taxing districts in the proportion that the length of all track owned or used in the district bears to the whole length of all track owned or used in the state (with some exceptions not here material). The Department of Revenue is required to equalize and distribute this full fair cash value and to certify it to the county clerks of the respective counties 'who shall extend taxes against such values the same as against other property in such taxing districts.' A complete scheme is thus provided for the taxation of railroad property, including railroad right of way property, which involves the assessment in the first instance by the Department of Revenue and, based upon the Department's certification, the extension of tax rates by local taxing districts against such property as is within their borders. The railway company and the railway company alone is recognized as the owner of railroad right of way property for purposes of taxation, . . .)'' The railway company, therefore, is called upon to bear the entire burden of taxation, whether it be the owner of a simple easement for railway purposes or an owner of the absolute fee. It would seem only reasonable and the conclusion is inescapable that the legislature had in mind when they enacted the statute under consideration that a railroad company having an easement only for railway purposes, was an ''owner'' and should be permitted to enjoy the benefits of the statute and thus escape unnecessary tax burdens.

In light of our analysis of the numerous cases, defining the word ''owner'' when used in statutory enactment, we are of the opinion that section 7-42 of the Cities and Villages Act of 1941 should be construed liberally; that it was enacted for the purpose of granting relief to taxpayers; that the class of persons entitled to its benefits, namely owners, are

not necessarily persons owning a fee simple title; that in determining who are its owners, it is necessary to consider the purposes of the acts and all the surrounding circumstances. Applying those conclusions to our problem before us, we are clearly of the opinion that the Chicago and North Western Railway Company held such title in the premises involved that they were "owners" and were entitled to the relief sought under the foregoing statute, and that the trial court was correct in so holding.

*Judgment affirmed.*