THE PEOPLE *ex rel.* THE TOWN OF AURORA *et al.*, Plaintiffs-Appellees, v. THE CITY OF AURORA, Defendant-Appellant.

Second District    No. 2—91—0269

Opinion filed December 24, 1991.

Valerie D. Brown and Ronald R. Moses, Corporation Counsel, of Aurora, for appellant.

Bruce A. Brown and Bruce L. Goldsmith, both of Goldsmith, Thelin, Schiller & Dickson, of Aurora, for appellees.

JUSTICE WOODWARD delivered the opinion of the court:

The City of Aurora (City) passed an ordinance purporting to disconnect from its corporate limits a portion of property that it had annexed two years earlier. The plaintiffs, the Town of Aurora (Town) and Richard Hammond, as Town highway commissioner, brought an action in *quo warranto* and for a declaratory judgment, seeking a determination that the attempted "deannexation" was null and void and that the City retained responsibility for the repair and maintenance of portions of two streets adjacent to the purportedly "deannexed" territory.

The trial court ruled for plaintiffs, holding that the "deannexation" was void *ab initio* because the City lacked the authority to disconnect the property at issue. On appeal, the City argues that section 7—3—4 of the Municipal Code (Ill. Rev. Stat. 1989, ch. 24, par. 7—3—4) gives municipalities the power to disconnect municipal property owned by the municipality itself. We disagree and hold that a municipality has no statutory authorization unilaterally to disconnect its own property. We therefore affirm.

The parties agree on most of the relevant facts. On November 3, 1987, the City, by ordinance, validly annexed territory previously owned by the Kane County Forest Preserve District. The area, to the east of the previous City limits, is bounded on the west by Hill Avenue, on the north by Morningside Drive, which was platted but has never been used as a street, on the south by a private property line, and on the east by Loucks Street, a two-lane street to the west of a residential area. By operation of the annexation statute (Ill. Rev. Stat. 1987, ch. 24, par. 7—1—1 *et seq.*), the territory annexed included the full width of those parts of Morningside Drive, Hill Street and Loucks Street adjacent to the territory. The Town borders the annexed area on the north, east and south.

On August 15, 1989, the City passed "An Ordinance Disconnecting Property from the City of Aurora (Loucks and Morningside Ave-

nues [*sic*])." The ordinance purported to disconnect the easterly 159 feet of the approximately 500 feet of territory between Hill Avenue and Loucks Street annexed in 1987. As authority for the disconnection, the ordinance invoked section 7—3—4 of the Municipal Code, which provides:

"Any territory, within any municipality, which is upon the border but within the boundary of the municipality may be disconnected from the municipality, in the discretion of its corporate authorities as follows:

A written petition, signed by owners of record representing a majority of the area of land in such territory, shall be filed with the clerk of the municipality, requesting that the specified territory be disconnected from the municipality. The petition shall be filed at least 30 days before it is considered by the corporate authorities. The petition shall be accompanied with the certificate of the proper county clerk, showing that all city taxes or assessments due up to the time of presenting the petition are fully paid. The corporate authorities, in their discretion, may disconnect the territory from the municipality, by an ordinance passed by a majority of the members elected to the city council, or board of trustees, as the case may be." Ill. Rev. Stat. 1989, ch. 24, par. 7—3—4.

There is no dispute that the City owns all of the property in the area sought to be disconnected, that the area is unpopulated and undeveloped, and that it does not include, according to a literal reading of the disconnection ordinance, the eastern lane of Loucks Street or any of Morningside Drive.

The plaintiffs brought a two-count complaint against the City. Count I, in *quo warranto*, asserted that the disconnection ordinance was void because (1) the parts of Morningside Drive and Loucks Street remaining in the City were "isolated" from the rest of the City; (2) the City had proceeded in bad faith and in violation of the "spirit" of section 7—3—4 by disconnecting only part of the property in order to saddle one or both of the plaintiffs with the obligation to repair and maintain the City's portions of Morningside Drive and Loucks Street; and (3) the City had not met the procedural requirements of section 7—3—4 inasmuch as it had not filed the required petition and any "petition" was not signed by all owners of record, was not filed at least 30 days before it was considered by the City, and was not accompanied by the proper certification that all taxes and assessments were paid to date or that no taxes were owing.

Count II of the complaint sought a declaration that the City retained the responsibility to maintain and repair the portions of Morningside Drive and Loucks Street adjacent to the area purportedly deannexed.

At the hearing on the complaint, the parties stipulated that before the 1987 annexation the portion of Loucks Street now at issue was under the jurisdiction of the Town road commissioner. The City decided to disconnect the eastern one-third of the recently annexed property after it completed building a new fire station on the rest of the property. Counsel for the City maintained that the City disconnected the eastern third of the property because that property was unneeded, as the entrance to the fire station was on Hill Street. Counsel for the plaintiffs did not stipulate to the reasons for deannexation; rather, the plaintiffs sought, through the testimony of Town highway commissioner Rich Hammond, to show that the City deannexed the property to avoid its obligations to maintain the part of Loucks Street previously annexed.

Hammond testified that the new fire station fronts on Hill Avenue. There is a distance of about 150 feet from the back of the station to Loucks Street; the vacant part of the property thus takes up somewhat more than a quarter of the 550-foot width of the annexed area. This eastern part of the property was (and apparently remains) undeveloped vacant land.

Before November 1987, the Town maintained all of Loucks Street. The annexation transferred responsibility for maintaining the now-disputed area to the City. Around June 1987, Hammond told Bill Kearney, an engineer for the City, that the Town would do repair work on the City's portion of Loucks Street if the City would supply the materials. These materials would cost about $6,000. Kearney spoke to the mayor, who turned down the offer. In August 1989, the City passed the disconnection ordinance. The Town never agreed to reannex any of the property and had not since done any repair or maintenance of the disputed part of Loucks Street.

The trial court ruled for the plaintiffs on both counts of the complaint. The court ruled that the City had no authority under home rule, statute or ordinance to deannex the property at issue. The court therefore held the disconnection ordinance void *ab initio*. The City now appeals.

The City argues that section 7—3—4 of the Municipal Code (set out above) authorizes it to disconnect the property at issue. The City reasons that section 7—3—4 plainly states that it may disconnect "[a]ny territory on its border but within its limits" and that nothing

in the Municipal Code restricts disconnection to populated territory. Plaintiffs reply that section 7—3—4 was intended to afford private property owners relief from the burdens of municipal government and not to empower a municipality to avoid its responsibilities by undoing a prior annexation.

We agree with plaintiffs that the City lacked authority to deannex its own property. We therefore need not consider plaintiffs' further argument that, assuming *arguendo* that the City had such authority, it failed to exercise that authority in the manner required by statute.

In construing a statute, a reviewing court must ascertain and fulfill the intent of the legislature. (*In re Disconnection of Certain Territory from the Village of Machesney Park* (1984), 122 Ill. App. 3d 960, 965.) Although the City argues that the language of section 7—3—4 unambiguously allows a municipality to disconnect property regardless of whether the property is populated or privately owned, the plaintiffs point out that the section requires in each case a landowners' petition, a waiting period between the filing of the petition and approval by municipal authorities, and a certification that taxes and assessments are paid up. The plaintiffs argue persuasively that because such requirements make no sense as applied to a municipality trying to disconnect its own land, the legislature could not have intended section 7—3—4 to authorize such proceedings. Plaintiffs note further that statutory authorizations of municipal power are to be construed narrowly (see *La Salle National Bank v. Village of Brookfield* (1981), 95 Ill. App. 3d 765, 769) and that the legislature chose not to provide a companion to the annexation statute (Ill. Rev. Stat. 1989, ch. 24, par. 7—1—1) that would have allowed "deannexation" by ordinance.

■ Our courts have long held that the purpose of the Municipal Code's disconnection provisions (Ill. Rev. Stat. 1989, ch. 24, par. 7—3—1 *et seq.* and predecessors) is to allow holders of property that is not being used for municipal purposes to disconnect that property in order to avoid the burdens of municipal taxation and regulation. (*Punke v. Village of Elliott* (1936), 364 Ill. 604, 611; *In re Disconnection of Certain Territory from the Village of Machesney Park* (1984), 122 Ill. App. 3d 960, 965; *American Community Builders, Inc. v. City of Chicago Heights* (1949), 337 Ill. App. 263, 269-70; *Woodward Governor Co. v. City of Loves Park* (1948), 335 Ill. App. 528, 539; *Vance v. Rankin* (1901), 95 Ill. App. 562, 565, *rev'd on other grounds* (1902), 194 Ill. 625.) The parties are correct that the present situation is most unusual; indeed, we have found no published opinion from Illinois or elsewhere that passes directly on a municipality's attempt to disconnect its own property from its corporate limits. Nonetheless, we

believe that *American Community Builders, Inc. v. City of Chicago Heights* (1949), 337 Ill. App. 263, although cited by neither party, is dispositive of this case.

Section 7—3—4 requires a petition signed by "owners of record representing a majority of the area of land" in the territory sought to be disconnected. The meaning of the word "owner" in a disconnection statute is to be determined in light of the object that the statute seeks to accomplish. (*Woodward Governor Co.*, 335 Ill. App. at 538.) In *American Community Builders*, private landowners sought court-ordered disconnection pursuant to a statute which required a petition from the owners of record of the land involved. The defendant municipality urged that the plaintiffs' petition was invalid because the municipality did not join in the petition even though it owned an easement for highways in portions of the property involved. The court disagreed. It explained that because the purpose of the statute was to enable landowners to avoid the burden of municipal taxation and regulation of property not used for municipal purposes, the municipality could not be considered an "owner" under the statute. The defendant, the court noted, was "not a taxpayer but a taxeater." *American Community Builders*, 337 Ill. App. at 270.

■ We find the reasoning of *American Community Builders* persuasive and fully applicable to the case at bar. To allow the City's creative attempt at self-mutilation would be inconsistent with the purpose of section 7—3—4, which (as is true of statutory disconnection provisions generally) does not contemplate that the City itself may be an "owner" entitled to bring a disconnection petition. We also concur with the plaintiffs' arguments that adopting the City's reading of section 7—3—4 would be inconsistent with the section's specific procedural provisions. As plaintiffs observe, the legislature could have provided a simple means for a municipality to "deannex" its own property by ordinance, and it chose not to do so. We therefore hold that the trial court correctly concluded that the 1989 disconnection ordinance was null and void.

We also agree with the plaintiffs that even had the City validly disconnected the disputed property it would not thereby have shed its burden to repair and maintain the portion of Loucks Street that it owned. Section 7—4—2 of the Municipal Code (Ill. Rev. Stat. 1989, ch. 24, par. 7—4—2) states that "[a]ll property which (1) is owned by a municipality, and (2) lies outside the corporate limits of the municipality, and (3) does not lie within the corporate limits of any municipality, shall be subject to the ordinances, control, and jurisdiction of the municipality in all respects the same as the property owned by the mu-

nicipality which lies within the corporate limits thereof.'' The property in dispute is owned by the City and has not been annexed by any other municipality. Even if validly disconnected and thus made into unincorporated territory, the property would fall within the plain meaning of section 7—4—2 and the City's burden to repair and maintain the property would not be lessened.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

McLAREN and INGLIS, JJ., concur.