CITIZENS FOR CONSERVATION, Petitioner-Appellant, v. THE VILLAGE OF LAKE BARRINGTON, Respondent-Appellee.

Second District No. 2—92—0278

Opinion filed February 10, 1993.

George M. Covington, of Gardner, Carton & Douglas, of Chicago, for appellant.

James P. Bateman and George A. Wagner, both of Law Offices of James P. Bateman, Ltd., of Barrington, for appellee.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

Petitioner, Citizens for Conservation (CFC), appeals the circuit court's denial of its motion to reconsider the dismissal of its petition to disconnect territory by court procedure from the respondent, the Village of Lake Barrington (the Village). The trial court held that the petition did not satisfy the requirements of section 7—3—6 of the Illinois Municipal Code (the Disconnection Statute or the Statute) (Ill. Rev. Stat. 1991, ch. 24, par. 7—3—6) because it was not signed by an

agent of the Village, which, according to the trial court, is an "owner of record" of the land petitioner seeks to disconnect.

On appeal, CFC argues that the trial court erred in concluding that the Village's interest in a recorded "conservation easement" in the property (see Ill. Rev. Stat. 1991, ch. 30, par. 401 *et seq.*) makes the Village an "owner of record" of the property as that term is used in the Disconnection Statute. We agree. We reverse the trial court's judgment and remand the cause for further proceedings on the petition.

The relevant facts are not in dispute. CFC owns a tract of over 20 acres within the Village. The petition to disconnect alleged that the requested disconnection would satisfy all of the enumerated requirements of the Statute.

The Village answered, denying the petition's allegations. The Village then moved to dismiss, arguing that the petition was invalid because the Village had not signed or consented to the petition. The Village argued that, as a party to a 1988 "Declaration of Conservation Easement" (the Declaration) filed with the Lake County recorder of deeds, it was an "owner of record" of the property. Therefore, the Village argued, the disconnection petition did not satisfy the Disconnection Statute's requirements because it did not include the Village as a signatory. The trial court agreed and dismissed the petition.

CFC maintains that the trial court erred in concluding that the Village's interest in the conservation easement makes it an "owner of record," as that term is used in the Statute, whose signature is required to validate the disconnection petition. Admitting that "owner of record" is not limited to holders of fee simple interests, CFC maintains that the Village's interest in CFC's property, although styled an "easement," differs qualitatively from the type of interest in property that qualifies a party as an "owner."

The Declaration is dated September 18, 1988. It is signed by the Village and by the Suburban National Bank of Palatine (the Bank) as trustee under a trust agreement of May 24, 1988. The Declaration describes the Bank as the owner of the property and as the declarant. The Lake County recorder of deeds file-stamped the Declaration on October 7, 1988.

The Declaration recites that the property consists of several "conservation areas" of "high ecological and aesthetic quality." The Declaration's purpose is to assure that "the easements, covenants, conditions, restrictions, charges and liens created herein shall govern and control the development and use of the Conservation Areas so as to create and provide a continued means to assure uniformity and har-

mony in the Conservation Areas, to preserve and maintain the ecological and aesthetic quality of the Conservation Areas, and to maintain the Conservation Areas as nearly as possible in their natural state as open space and pasture."

The Declaration states that the conservation areas shall be held, sold, and conveyed subject to certain conditions that are to be binding in perpetuity on all persons (and their successors) having any right, title or interest in any of the property. These conditions are to inure "to the benefit of each owner thereof and the Village."

Paragraph 1 of the Declaration, entitled "Easement; Restrictions," states that numerous possible uses of the property are hereby restricted. Some of these uses (*e.g.*, the erection of billboards and the maintenance of horses and livestock) are forbidden without qualification. Certain other uses (*e.g.*, the placement of tents, trailers, and other buildings) are allowable, but only upon the prior written consent of the Village.

The remainder of the Declaration, as relevant here, provides that the maintenance of the property and the enforcement of the Declaration shall be the responsibility of the owner or owners of the conservation areas. The owners of the conservation areas shall have the right to enforce the Declaration. The Village shall have the "separate right, but not the obligation," to enforce the declaration.

We set out the pertinent part of the Disconnection Statute. For reasons we shall later make clear, we emphasize certain crucial phraseology:

"§7—3—6. The *owner or owners of record of any area of land* consisting of one or more tracts, lying within the corporate limits of any municipality, may have such territory disconnected which (1) contains 20 or more acres; (2) is located on the border of the municipality; (3) if disconnected, will not result in the isolation of any part of the municipality from the remainder of the municipality; (4) if disconnected, the growth prospects and plan and zoning ordinances, if any, of such municipality will not be unreasonably disrupted; (5) if disconnected, no substantial disruption will result to existing municipal service facilities \*\*\*; (6) if disconnected the municipality will not be unduly harmed through loss of tax revenue in the future. The procedure for disconnection shall be as follows: *The owner or owners of record of any such area of land* shall file a petition in the circuit court \*\*\* alleging facts in support of the disconnection. *The municipality from which disconnection is sought shall be made a defendant,* and it, or any taxpayer residing in that mu-

nicipality, may appear and defend against the petition. If the court finds that the allegations of the petition are true and that the area of land is entitled to disconnection it *shall* order the specified land disconnected from the designated municipality. If the circuit court finds that the allegations contained in the petition are not true, the court *shall* enter an order dismissing the petition." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 24, par. 7—3—6.

The issue before us is whether, under the facts of this case, the Village is an "owner of record" of the property as that term is used in the Statute. For a variety of reasons, we conclude that it is not.

The cardinal rule of statutory construction is to ascertain and effectuate the legislature's intent. (*Hernon v. E.W. Corrigan Construction Co.* (1992), 149 Ill. 2d 190, 194; *People ex rel. Town of Aurora v. City of Aurora* (1991), 222 Ill. App. 3d 950, 954.) To determine the legislature's intent, a court may consider "not only the language of the statute, but also the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved." (*People v. Frieberg* (1992), 147 Ill. 2d 326, 345.) We have recently reiterated that the meaning of the word "owner" in a disconnection statute is to be determined in light of the object that the statute seeks to accomplish. *Aurora*, 222 Ill. App. 3d at 955; see *Woodward Governor Co. v. City of Loves Park* (1948), 335 Ill. App. 528, 538.

■ The judicial procedure in the Disconnection Statute is one of the three methods by which property owners may have their property disconnected from a municipality. The other two are found in section 7—3—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1991, ch. 24, par. 7—3—1), which provides for the disconnection of territory from a newly organized municipality, and in section 7—3—4 of the Illinois Municipal Code (Ill. Rev. Stat. 1991, ch. 24, par. 7—3—4), which provides for disconnection by a petition made to the municipality itself.

It is long settled that the fundamental purpose of all these disconnection procedures is to allow holders of property that is not being used for municipal purposes to disconnect that property in order to avoid the burdens of municipal taxation and regulation. (*Punke v. Village of Elliott* (1936), 364 Ill. 604, 611; *Aurora*, 222 Ill. App. 3d at 954; *American Community Builders, Inc. v. City of Chicago Heights* (1949), 337 Ill. App. 263, 269-70.) Because the aim of statutory disconnection is taxpayer relief, and because a municipality is "not a taxpayer but a taxeater" (*Chicago Heights*, 337 Ill. App. at 270), we deem it unlikely that a municipality, particularly the one from which disconnection is being sought, could ever be considered a property

"owner" under the Statute. Indeed, employing this rationale, we recently held that a municipality is not an "owner" of property as that term is used in section 7—3—4. Thus, we refused to allow a municipality to use section 7—3—4 to disconnect part of its own territory from its municipal limits. *Aurora*, 222 Ill. App. 3d at 954-55.

We know of no case holding that a municipality that is a defendant in a procedure under the Disconnection Statute may ever be considered an "owner" as the term is used therein. Aside from maintaining consistency in interpreting sections 7—3—4 and the Disconnection Statute, several considerations militate strongly in favor of the conclusion that a municipality that is the defendant in a judicial disconnection proceeding is *per se* not an "owner of record" whose consent is required for a valid petition.

First, the purpose of the Disconnection Statute—granting relief to taxpayers from the municipality's regulatory power—is inconsistent with making the municipality a copetitioner for disconnection. Second, to do so would make the municipality both a petitioner and a respondent in the proceeding. Such a conflict of interest would be inconvenient if not absurd. We must presume that the legislature did not intend absurdity or inconvenience. (*Hernon*, 149 Ill. 2d at 195.) Third, conditioning disconnection on the consent of the municipality involved would effectively give the municipality a veto over private parties' attempts to obtain relief from the burden of the municipality's regulation and taxation. Thus, the municipality could circumvent the entire judicial disconnection process made available to taxpayers by the legislature. We cannot assume that the legislature intended to limit so severely the procedure it established. Finally, the municipality need not be included as a petitioner for its interests to be represented. As a respondent, the municipality may seek to defeat the petition on any of the grounds enumerated in the Statute. Moreover, as the Village here concedes, the disconnection of the property will not lessen its right to enforce its conservation easement.

However, we need not decide definitively whether a municipality can ever be an "owner" of property under the Disconnection Statute. Under the facts of this case, the Village's interest in the conservation easement would not entitle a party, municipal or private, to representation as a petitioner in a proceeding under the Statute. No party with this type of interest would be an "owner" as that term is used in the statute.

The Village relies primarily (as it appears did the trial court) on *Vance v. Rankin* (1900), 95 Ill. App. 562, *rev'd on other grounds* (1902), 194 Ill. 625, and *Woodward Governor Co. v. City of Loves*

*Park* (1948), 335 Ill. App. 528, both decided under the predecessor to the Disconnection Statute. In each case, the owner of an easement in, but not the fee to, the property at issue was deemed an "owner of record" under the provision for court-ordered disconnection. Although we recognize the continuing validity of these decisions, we believe that they are easily distinguishable from the present case, even leaving to one side that both cases involved a private party rather than the municipality from which disconnection was sought.

In each of those cases, the appellate court held that a railroad that owned a right-of-way over which its trains ran was an "owner of record" under the predecessor to the Statute. In each case, the court recognized that "owners" were not limited to those who owned in fee simple; rather, who was an "owner" had to be determined with reference to the purposes of the statute at issue. (*Woodward*, 335 Ill. App. at 538-39, 540-41; *Vance*, 95 Ill. App. at 565.) In each instance, the court stressed that the purpose of the statute was to relieve those who exerted control over property from the burden of inappropriate municipal taxation and regulation. (*Woodward*, 335 Ill. App. at 538-39; *Vance*, 95 Ill. App. at 565.) Moreover, the *Woodward* court declared that the easement holder was an "owner" for purposes of the statute at issue in that case because the easement gave its holder the exclusive, long-standing, and active possession and control of the property. Thus, although not a fee owner of the property, the railroad in *Woodward* had proprietorship and control of the land, and along with this proprietorship and control, it was subject to potentially inappropriate municipal regulation and taxation. *Woodward*, 335 Ill. App. at 537-40.

By contrast, a party whose interest in property does not entail such permanent or substantial rights of possession, use, or control will not be deemed an "owner" of the property for the purposes of the Disconnection Statute. In *Nicholson v. Village of Schaumburg Center* (1961), 33 Ill. App. 2d 197, a utility company owned property in fee. The plaintiffs, owners of an easement for access and an unrecorded right to farm part of the property, were held not to be "owners" of the property for disconnection purposes. *Nicholson*, 33 Ill. App. 2d at 204.

Although the Declaration makes the Village's rights under the "conservation easement" permanent, those rights, though styled an easement, are really more analogous to the rights of a party to a restrictive covenant or to a reservation of municipal police powers. The Declaration and the statute on which it is based do not grant the Village any right to occupy, use, or place structures on the property. (See Ill. Rev. Stat. 1991, ch. 30, par. 401.) Rather, the Village has only the

right to restrain others from making certain uses of the land. This limited and negative right is qualitatively different from the affirmative rights of possession, occupation, and control in *Vance* and *Woodward*. Moreover, the Village appears to lack even the affirmative rights of occupation, use, or control that the *Nicholson* plaintiffs could claim.

Policy considerations bolster the rule that we have drawn from the limited but consistent case law on the subject. To require disconnection petitions to include the signatures of the holders of negative rights, such as rights granted by restrictive covenants, would greatly complicate and burden the disconnection procedure without advancing the statutory goal of protecting the interests of those whose occupation, possession, control, or ownership of the property make them subject to the burden of municipal regulation or taxation of that property. Such a needless administrative encumbrance would contradict the established rule that statutory disconnection provisions are to be construed liberally to facilitate disconnection and thereby afford relief from inappropriate municipal regulation and taxation. *Woodward*, 335 Ill. App. at 540-41.

The Village emphasizes that, according to statute, its rights in the conservation easement may be transferred, recorded, and indexed in the same manner as fee simple interests in the property (see Ill. Rev. Stat. 1991, ch. 30, par. 401(b)). However, the manner in which such an interest may be transferred or conveyed is logically irrelevant to whether that interest is of the quality that would make its holder an "owner" of property for the purposes of a disconnection proceeding.

We hold that the trial court erred in dismissing the petition for disconnection. We reverse the judgment of the circuit court of Lake County and remand the cause for further proceedings on the disconnection petition.

Reversed and remanded.

UNVERZAGT and BOWMAN, JJ., concur.