No. 2-09-0418          Filed: 3-30-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re PETITION TO DISCONNECT | ) | Appeal from the Circuit Court |
| CERTAIN TERRITORY LOCATED | ) | of Kane County. |
| IN KANE COUNTY, ILLINOIS, FROM | ) | |
| THE VILLAGE OF CAMPTON HILLS | ) | No. 07--MC--15 |
| | ) | |
| (Petitioners of the Fox Creek Subdivision, | ) | Honorable |
| Petitioners-Appellants, v. The Village of | ) | Michael J. Colwell, |
| Campton Hills, Respondent-Appellee). | ) | Judge, Presiding. |

PRESIDING JUSTICE ZENOFF delivered the opinion of the court:

Petitioners of the Fox Creek Subdivision (petitioners) appeal from an order of the circuit court of Kane County granting summary judgment in favor of the Village of Campton Hills (Village) upon petitioners' petition to disconnect from the Village. We affirm.

FACTS

The Village was incorporated in 2007. In re Petition to Disconnect Certain Territory From the Village of Campton Hills, 386 Ill. App. 3d 355, 358 (2008). According to the petition to disconnect, the Village was established by court order. The Village is located south and west of the city of Elgin, east of the Village of Lily Lake, and west and north of the city of St. Charles. On November 30, 2007, petitioners filed a petition pursuant to section 7--3--1 of the Illinois Municipal Code (Code) (65 ILCS 5/7--3--1 (West 2006)), which allows, within one year of the organization of any municipality, disconnection of any territory that is "upon the border, but within the boundary of the municipality" and that meets other statutory criteria. The territory petitioners seek to

disconnect (territory) is 89.23 acres consisting of individual parcels situated in the middle lower third of the Village, according to a map that was an exhibit in the trial court. Ninety-five acres adjacent to the south of the territory are owned by the Kane County Forest Preserve District and are not within the corporate limits of the Village. The Village (including the territory) surrounds the forest preserve.

Following the trial court's denial of the Village's motion for summary judgment on the issue of whether disconnection would isolate certain other parts of the Village, the Village filed a second motion for summary judgment, arguing that the territory is not "upon the border" of the Village and, therefore, does not qualify for disconnection. The trial court granted the Village's motion for summary judgment on December 12, 2008. On March 16, 2009, the trial court granted petitioners' motion to reconsider but, having reconsidered, affirmed its ruling in favor of the Village. Petitioners filed a timely notice of appeal.

DISCUSSION

Section 7--3--1 of the Code provides in relevant part:

"Within one year of the organization of any municipality under the provisions of Divisions 2 and 3 of Article 2 of this Code, any territory which has been included therein may be disconnected from such municipality if the territory sought to be disconnected is (1) upon the border, but within the boundary of the municipality, (2) contains 20 or more acres, (3) if disconnected will not result in the isolation of any part of the municipality from the remainder of the municipality, and (4) if disconnected will not be a territory wholly bounded by one or more municipalities and a river or lake, (5) if disconnected, the growth prospects and plan and zoning ordinances, if any, of such municipality will not be unreasonably

disrupted, (6) if disconnected, no substantial disruption will result to existing municipal service facilities such as, but not limited to, sewer systems, street lighting, water mains, garbage collection and fire protection, (7) if disconnected the municipality will not be unduly harmed through loss of tax revenue in the future." 65 ILCS 5/7--3--1 (West 2006). The Village argued in the trial court that the territory is not upon the Village's border and that, if disconnected, the territory will be wholly bounded by the Village. The trial court's written order granting the Village's motion for summary judgment did not contain the court's reasoning, and petitioners have not filed a report of proceedings of the hearing on the motion. We are, therefore, without the benefit of the trial court's reasoning. However, our review of a grant of summary judgment is de novo. Majetich v. P.T. Ferro Construction Co., 389 Ill. App. 3d 220, 223 (2009).

The parties' arguments on appeal mirror their arguments before the trial court. Petitioners contend that the territory sits upon the line that separates it (and the Village) from the forest preserve and that, therefore, it sits upon the border of the Village. Petitioners further contend that, if disconnected, the territory will not be wholly bounded by the Village because the forest preserve, which is not within the Village's corporate limits, is contiguous to the territory's southern boundary. The Village maintains that for purposes of disconnection its border is its exterior, or outermost, border and that the forest preserve must be ignored when determining whether the territory would be wholly bounded by the Village after disconnection.

In disconnection cases, the petitioners have the burden of proving the statutory requirements. Village of Campton Hills, 386 Ill. App. 3d at 361. The disconnection statute is to be liberally construed in favor of disconnection, and the common theme is to allow disconnection absent a hardship or impairment to the municipality. Village of Campton Hills, 386 Ill. App. 3d at 361.

Here, the record does not reflect any facts with respect to whether disconnection would create a hardship for or impair the Village.[1] The parties presented the issue of what "upon the border" means strictly as an issue of statutory construction. Our primary objective in construing a statute is to ascertain and give effect to the legislature's intent. Village of Campton Hills, 386 Ill. App. 3d at 363. The best indication of that intent is the plain and ordinary meaning of the statute's language. Village of Campton Hills, 386 Ill. App. 3d at 363. In construing statutes, courts presume that the legislature did not intend absurdity, inconvenience, or injustice. Village of Campton Hills, 386 Ill. App. 3d at 363. For purposes of statutory interpretation, we evaluate the provision as a whole, rather than reading certain phrases in isolation. In re Hannah E., 372 Ill. App. 3d 251, 259 (2007).

The aim of statutory disconnection is taxpayer relief. Citizens for Conservation v. Village of Lake Barrington, 241 Ill. App. 3d 471, 475 (1993). The disconnection statute is to be given a sensible, intelligent, and reasonable meaning. In re Petition to Disconnect Certain Territory from the City of Palos Heights, 30 Ill. App. 2d 336, 342 (1961). "The legislature has fixed the conditions for disconnection, and the only question the courts are required to consider is whether the owner of the property to be disconnected has presented a case that brings the property involved within the statute." Indian Valley Golf Club, Inc. v. Village of Long Grove, 135 Ill. App. 3d 543, 550-51 (1985). If land to be disconnected meets the statutory requirements, a petition for disconnection must be granted; however, if the land fails to meet any of the requirements, the petition for disconnection must be denied. Long Grove, 135 Ill. App. 3d at 551.

---

[1] At oral argument, petitioners' attorney thought that the record might reflect that all other statutory criteria for disconnection had been met. The record does not so reflect.

Petitioners argue that a "border" is the place where a municipality's corporate limits or boundaries end, and they cite Independent Amusements, Inc. v. Village of Milan, 348 Ill. App. 258 (1952). In Village of Milan, for purposes of the disconnection statute, this court equated a "border" with the appellant's "boundary or village limits." Village of Milan, 348 Ill. App. at 262-63. Petitioners then point us to the undisputed fact that the forest preserve is outside the Village's boundaries or corporate limits. But we do not find Village of Milan instructive, because there the entire south boundary of the area sought to be disconnected was identical to the south boundary of the village. Village of Milan, 348 Ill. App. at 263. In other words, the border in Village of Milan was the margin, or the periphery of the municipality. Therefore, the synonyms for "border" used therein, such as "boundary" and "corporate limits," describe the periphery as well. Neither party has furnished us with a case like the one at bar, where the border of the territory sought to be disconnected is located not on the municipality's periphery but on a line dividing the municipality from an unincorporated area within its broader confines.

Petitioners additionally argue that the trial court's grant of summary judgment in favor of the Village is inconsistent with the statute governing downstate forest preserve districts, the Downstate Forest Preserve District Act (Act) (70 ILCS 805/0.001 et seq. (West 2006)), and especially section 5a (70 ILCS 805/5a (West 2006)) and section 5c (70 ILCS 805/5c (West 2006)) of the Act. Petitioners rely on the following language in section 5a:

> "When any district borders upon any navigable body of water, the title to the bed or submerged land of which is vested in the State of Illinois, the district may, with the written approval of the Secretary of the Illinois Department of Transportation, take possession of,

enclose, fill in, reclaim and protect any portion of such submerged land bordering thereon
\*\*\*."  70 ILCS 805/5a (West 2006).

Petitioners rely on section 5c in its entirety:

"Whenever any district is located along any such navigable body of water as set forth in Section 5a, the right is hereby given to the corporate authorities thereof to take charge of, control and police such body of water and the land thereunder for a distance of three hundred feet along any forest preserve, boulevard or pleasure drive constructed by it and bordering thereon."  70 ILCS 805/5c (West 2006).

The Village asserts that the Act has no relevance.  Petitioners contend that the territory is in the same position as land or a waterway described in sections 5a and 5c, because the territory "borders" or "is bordering" a forest preserve district.  However, the subject of the Act is the extent of the authority of the forest preserve district, which is not at issue in our case.  We do not find the Act helpful.

We find helpful our supreme court's declaration that tracts subject to disconnection, "under the situation outlined in the act, might be detached from the fringes of cities and villages." (Emphasis added.)  Punke v. Village of Elliott, 364 Ill. 604, 612 (1936).  A "fringe" is a "border, edge, margin," or "periphery."  Webster's Third New International Dictionary 912 (1993).  To detach connotes a separation from a larger mass, usually without violence or damage.  Webster's Third New International Dictionary 615 (1993).  It is more likely that separation of a tract on the periphery of a municipality, rather than one in the middle, can be accomplished without damage to the municipality, whereas the excision of a tract in the middle of the municipality is more a carving resulting in disfigurement than it is a detachment.

Petitioners distinguished <u>Punke</u> at oral argument by saying that <u>Punke</u> involved the question of the constitutionality of the disconnection statute then in effect and that the court's reference to "fringes" was a gratuitous non sequitur. While <u>Punke</u> is not dispositive of the issue in our case, it is a useful insight into legislative intent, at least as of 1935 when the version of the disconnect statute under consideration in <u>Punke</u> was passed. In denying a constitutional challenge to the classification of 20 acres as the minimum for disconnection our supreme court observed:

"The legislature may have had in mind that acreage of twenty acres would constitute a small farm and would ordinarily be used for that purpose, while smaller areas might have possibilities as sites *** which often enter into urban life and constitute such latter premises integral parts of the municipality. ***

*** Size was not an unreasonable standard to adopt as the basis of classification. It was within the legislative sphere to determine the size of the premises which, under the situation outlined in the act, might be detached from the fringes of cities and villages." <u>Punke</u>, 364 Ill. at 612.

Although in modern times the distinction between rural and urban has become blurred with subdivision upon subdivision replacing farmland in parts of our state, it still makes sense to allow for disconnection from the fringes rather than from the interior in order to maintain the integrity of a municipality.

This reasoning is bolstered by reading section 7--3--1 as a whole. The legislature imposed conditions other than that the territory must be "upon the border" of the municipality, such as that disconnection must not result in isolation of any part of the municipality from the remainder of the municipality, must not disrupt the growth prospects and plan and zoning ordinances of the

municipality, and must not disrupt existing municipal services or unduly harm tax revenue. 65 ILCS 5/7--3--1 (West 2006). Slicing up the Village's core would run contrary to the statute's goal of preserving the integrity of the municipality. For instance, the law promotes the gradual and natural extension of municipal limits and the uniform, economical, and efficient expansion of urban areas. Village of Chatham v. County of Sangamon, 351 Ill. App. 3d 889, 902 (2004). These objectives cannot be achieved by dissecting chunks out of the middle of the municipality. Orderly and fair growth occurs outward.

If we interpret the division between the territory and the forest preserve to be "the" border for purposes of section 7--3--1, then we would be reading a condition or limitation into the statute by saying that a municipality may have more than one border, which we may not do consistent with time-honored principles of statutory construction. " 'A court must not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that the legislature did not express.' " In re Estate of Hale, 383 Ill. App. 3d 559, 563 (2008), quoting In re Estate of Lower, 365 Ill. App. 3d 469, 478 (2006). The legislature provided that the territory sought to be disconnected must be upon "the" border. "The" in this context is used as a function word to indicate that a following noun refers to something that is unique or is thought of as unique or exists as only one at a time. See Webster's Third International Dictionary 2368 (1993).

Petitioners do not dispute that the periphery of the Village is its border; instead, they ask us to define the line between the territory and the forest preserve as another, internal border because it marks the division between two political subdivisions. At oral argument petitioners denied that their interpretation would create multiple borders, but a look at the map belies their assertion. A red line delineates the outer periphery and another red line delineates the forest preserve, and the lines

delineating each nowhere meet. While it is true that there is a dividing line between the territory and the forest preserve, the dividing line is not a border. All borders are dividing lines, but not all dividing lines are borders. If the legislature had contemplated the outcome urged by petitioners, it would not have used "the" in front of "border," but would have made clear that a municipality from which a territory can be disconnected can have more than one border. In deciding whether disconnection would cause isolation of a territory, this court has held that no isolation occurs "so long as there remains a continuing and connected boundary line." La Salle National Bank v. Village of Burr Ridge, 81 Ill. App. 2d 209, 216 (1967). A continuing and connected boundary line can exist only on the periphery. Consequently, we reject petitioners' contentions.

Because we hold that petitioners' petition to disconnect does not meet the Code's "upon the border" requirement, we need not decide whether the territory, upon disconnection, would be wholly bounded by the municipality. Accordingly, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

McLAREN and HUTCHINSON, JJ., concur.